**F I L E D**

PUBLISH

**April 3, 2007**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MIGUEL ANGEL TORRES DE LA
CRUZ,

Petitioner-Appellant,

v.

No. 06-9515

DOUGLAS MAURER, District
Director, United States Immigration
and Naturalization Service, Denver,
Colorado,* and ALBERTO R.
GONZALES, Attorney General,

Respondents-Appellees.

---

**PETITION FOR REVIEW OF AN ORDER OF THE BUREAU
OF IMMIGRATION APPEALS
(D.C. NO. 00-CV-1658-JLK)
(Agency No. A43 780 280)**

---

Submitted on the Briefs:**

Jim Salvator, Lafayette, Colorado, for Petitioner-Appellant.

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Douglas
Maurer replaces Joseph Greene as a respondent in this case.

** After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

William J. Leone, United States Attorney, and Mark S. Pestal, Assistant United States Attorney, for Respondents-Appellees.

Before **TACHA**, Chief Judge, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Miguel Angel Torres de la Cruz (Torres), a native and citizen of Mexico, was admitted into the United States as a lawful permanent resident on October 30, 1992. After an August 6, 1999 state court conviction in Utah for possession of a controlled substance (cocaine), the then-Immigration and Naturalization Service (INS)[1] initiated removal proceedings against him in December 1999. He was found to have committed a removable offense and ordered removed.

In this appeal, Torres asserts four claims: (1) his state conviction is not a controlled substance offense under the recent holding in *Salinas v. United States*, 547 U.S. 188 (2006), and thus does not constitute a removable offense; (2) his state misdemeanor conviction for possession cannot constitute an aggravated felony within the meaning of the Immigration and Naturalization Act (INA); (3) the immigration court's interpretation of 8 U.S.C. § 1229b(d)(1), the so-called "stop-time" rule, violates his right to due process and equal protection; and (4) his

---

[1] The enforcement functions of the INS were reconstituted as U.S. Immigration and Customs Enforcement during the pendency of this case. For the sake of clarity, we will continue to refer to the agency as the INS throughout this opinion.

removal proceedings violate the Vienna Convention and an INS regulation on consular notification rights.

Lacking jurisdiction over Torres's first two claims, we DISMISS them. While retaining jurisdiction over his remaining two claims, we find they lack merit, DENY the petition for review, and AFFIRM the order of removal.

## I. Background and Procedural History

This case began in December of 1999 when the INS charged that Torres was removable for committing an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii), and a "controlled substance" violation under 8 U.S.C. § 1227(a)(2)(B)(i), based on his Utah state guilty plea to simple possession of cocaine in August of 1999. During his removal hearings, the INS dropped the "aggravated felony" count as a basis for removal. On February 7, 2000, an immigration judge (IJ) found that Torres had a "controlled substance" conviction and was removable under § 1227(a)(2)(B)(i), determined that he was ineligible for cancellation of removal, and ordered him removed to Mexico. On appeal, the Board of Immigration Appeals (BIA) considered Torres's challenges to the IJ decision and found them to be without merit in an order dated August 16, 2000.

On September 1, 2000, a Utah sentencing court modified Torres's conviction from a felony to a misdemeanor. Based on the state court's action, on

September 29, 2000,[2] Torres filed a motion to reopen the proceedings with the BIA to challenge his removability. The BIA denied the motion as without merit on February 8, 2001.

Because he was in custody, Torres filed a habeas action in U.S. District Court for the District of Colorado on August 21, 2000. While the habeas petition was initiated prior to the BIA's denial of his motion to reopen, Torres later amended his petition to include the arguments presented before the BIA in his motion to reopen. The case was later held in abeyance pending the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001).

In January 2006, the case was transferred to this court and converted to a petition for review pursuant to the REAL ID Act of 2005, Pub. L. No. 109–13, Div. B, § 106(a), (c), 119 Stat. 231, 310 (2005).

## II. Jurisdiction

Before addressing Mr. Torres's claims, our threshold inquiry is whether we have jurisdiction to consider this appeal. Congress has provided an avenue for direct review of final orders of removal through petitions for review in courts of appeals. 8 U.S.C. § 1252(a)(1); *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1162 (10th Cir. 2004). Indeed, "petitions for review filed with the court of appeals are the sole and exclusive means of review of most administrative orders of removal."

---

[2] Although Torres's motion was dated September 2, 2000, it was time-stamped by the BIA on September 29, 2000.

-4-

*Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (internal quotation omitted).

Although Torres failed to file a petition for review within thirty days of either of the BIA's final orders of removal as required by 8 U.S.C. § 1252(b)(1), the REAL ID Act cures this defect. Torres's appeal is premised on his habeas petition filed in the district court under 28 U.S.C. § 2241. The REAL ID Act directs that habeas petitions (1) challenging a final order of removal, and (2) which were pending in the district courts before the effective date of the REAL ID Act, like Torres's, are to be transferred to the appropriate court of appeals as a petition for review under §1252 notwithstanding the failure to comply with § 1252(b)(1)'s thirty-day requirement. Pub. L. No. 109–13, Div. B at § 106(c), 119 Stat. at 310 ("The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that subsection (b)(1) [the thirty-day deadline] of such section shall not apply."); *see Schmitt v. Maurer*, 451 F.3d 1092, 1095 (10th Cir. 2006).

Here, the BIA ordered Torres removed on August 16, 2000. Torres then timely filed his habeas petition challenging that final order of removal in the district court on August 21, 2000. The district court later granted his motion to amend the habeas petition to include arguments considered by the BIA in its denial of the motion to reopen on November 14, 2000. These arguments therefore

fall within the language of the transfer provision.[3]  The habeas petition is therefore considered a petition for review over both BIA decisions and our jurisdiction is found under 8 U.S.C. § 1252.  *See Schmitt*, 451 F.3d 1092, 1094–95.

Notwithstanding the foregoing, we only retain jurisdiction over claims challenging a final order of removal "if the alien has exhausted all administrative remedies available . . . as of right."  8 U.S.C. § 1252(d)(1).  We have recognized that "[n]eglecting to take an appeal to the BIA constitutes a failure to exhaust administrative remedies as to any issue that could have been raised, negating the jurisdiction necessary for subsequent judicial review."  *Soberanes v. Comfort*, 388 F.3d 1305, 1308–09 (10th Cir. 2004).  Accordingly, we have jurisdiction only over those claims that were presented to the BIA and were properly appealed to this court through Torres's habeas petition.

Under this framework, we are deprived of jurisdiction over Torres's first two claims.

## A.    Controlled Substance Offense

Torres's first claim challenges whether his drug possession conviction is a "removable offense" after *Salinas*, 547 U.S. 188 (2006).  *Salinas* holds that a

---

[3]  The district court initially granted Torres's amendment before the BIA issued its final order.  Because the BIA failed to issue a timely final order, once the final order was issued, the district court considered it incorporated into the habeas petition.

conviction for simple possession of a controlled substance is not a "controlled substance offense" for purposes of the United States Sentencing Guidelines because the Guidelines expressly define the offense to require a trafficking element. 547 U.S. at 188. Considering that *Salinas* was decided more than five years after his agency proceedings were completed, Torres obviously could not have invoked *Salinas* in the first instance before the BIA.

In his motion to reopen, however, Torres generally charged that the reclassification of his state conviction as a misdemeanor renders the offense incapable of serving as a basis of removal under 8 U.S.C § 1227(a)(2)(B)(i). He argued that the offense fell under the "functional equivalent" of the Federal First Offender Act[4] and that the "offense is not a deportable offense." A.R. at 15. Nevertheless, where a specific issue was not addressed in administrative proceedings in the manner it is now addressed before us, general statements in the notice of appeal to the BIA are insufficient to constitute exhaustion of administrative remedies. *See Ramani v. Ashcroft,* 378 F.3d 554, 560 (6th Cir. 2004). Accordingly, Torres's broad assertions in his motion to reopen are not sufficient to exhaust the issue. Torres did not ask the BIA to consider, nor did the BIA analyze, whether the conviction for a "controlled substance offense" in the

---

[4] Torres does not revive this claim in his briefs on appeal. Accordingly, we find this argument abandoned and make no pronouncements as to the BIA's decision.

-7-

removal context is analogous to the Sentencing Guidelines' definition requiring a trafficking element.

Torres's failure to exhaust this issue precludes our jurisdiction and we dismiss the claim without reaching the merits.

**B.    Aggravated Felony**

Torres's second argument is that he was not convicted of an "aggravated felony," thereby preserving his eligibility for cancellation of removal under 8 U.S.C. § 1229b(a). The record makes clear that this issue was never presented to the BIA, which divests us of jurisdiction.

**C.    Torres's Other Claims**

Since they were presented to the BIA, Torres's final two claims survive the procedural bar of exhaustion. Nevertheless, they must still withstand other limits to our subject matter jurisdiction. Congress has eliminated judicial review of (1) BIA discretionary decisions, 8 U.S.C. § 1252(a)(2)(B), as well as (2) any "final order of removal against an alien who is removable by reason of having committed" certain offenses, among them controlled substance offenses, 8 U.S.C. § 1252(a)(2)(C).

These broad jurisdiction-stripping provisions are subject to two exceptions. First, as an Article III court, we have inherent jurisdiction "to determine whether the jurisdictional bar applies. We may therefore decide whether the petitioner is (i) an alien (ii) deportable (iii) by reason of a criminal offense listed in the

statute." *Latu v. Ashcroft,* 375 F.3d 1012, 1017 (10th Cir. 2004) (internal citations omitted). Accordingly, we have jurisdiction to review Torres's arguments challenging the BIA's order of removal on the basis that his plea and conviction do not constitute an offense warranting removal. *See Ballesteros v. Ashcroft*, 452 F.3d 1153, 1156–1157 (10th Cir. 2006).

The second exception is statutory, coming from the REAL ID Act. Congress added a new section making clear that "[n]othing in [1252(a)(2)(B) or (C)], or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). Consequently, we are not barred by § 1252(a)(2)(B) or (C) from reviewing Torres's claims that raise either constitutional or legal questions. *See Ballesteros*, 452 F.3d at 1157.

We find Torres's final two claims sufficiently raise legal or constitutional questions to confer jurisdiction to consider their merits. Torres's due process and equal protection challenges to the "stop-time" rule patently present a constitutional question. His final argument based on consular notification rights also raises a question of law under § 1252(a)(2)(D) because it involves legal issues in interpreting a treaty.[5]

---

[5] We have held that § 1252(a)(2)(D)'s "question of law" refers to a "narrow category of issues regarding statutory construction." *Diallo v. Gonzales*,
(continued...)

### III. Analysis

We review the legal and constitutional questions de novo. *Ferry v. Gonzales,* 457 F.3d 1117, 1226 (10th Cir. 2006). We now address Torres's final two claims.

### A. The Stop-Time Rule and Cancellation of Removal

---

[5](...continued)
447 F.3d 1274, 1282 (10th Cir. 2006). "Questions of law" pertain to "those issues that were historically reviewable on habeas-constitutional and statutory-construction questions, not discretionary or factual questions." *Id.* (citing H.R. Rep. No. 109-72 at 175 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 240). Thus, the BIA's determination of a statutory time-bar sufficiently raises a question of law to confer jurisdiction. *Id.* Here, Torres argues that he was entitled to consular notification under the Vienna Convention and an INS regulation and that a BIA procedural bar may not apply to those rights.

In *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, we noted that "an Act of Congress . . . is on a full parity with a treaty." 389 F.3d 973, 1009 n.5 (10th Cir. 2004). The converse is also true: Congress's treaty power is given similar weight to its legislative power. *Cf. Valentine v. United States*, 299 U.S. 5, 10 (1936) ("The Constitution declares a treaty to be the law of the land. It is consequently . . . to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates of itself without the aid of any legislative provision." (internal quotes omitted)). Thus, the interpretation of treaties, such as the Vienna Convention, is a "question of law" under § 1252. *See, e.g., O Centro*, 389 F.3d at 988 (Murphy, J., concurring in part and dissenting in part) ("First and foremost, the interpretation of [a] Convention is a question of law."); *see also Quang Ly Tran v. Gonzales,* 447 F.3d 937, 943 (6th Cir. 2006) (reviewing legal issues involving the U.N. Convention Against Torture (CAT) under the § 1252(a)(2)(D) grant); *Akram Qassim Hamid v. Gonzales*, 417 F.3d 642, 647 (7th Cir. 2005) (courts of appeals may review constitutional and legal questions "relevant to a petitioner's claim for relief under CAT"); *Kamara v. Att'y Gen. of the United States,* 420 F.3d 202, 211 (3d Cir. 2005) (finding jurisdiction over "pure questions of law" and the "issues of application of law to fact" in a CAT claim).

Torres launches a constitutional attack on the denial of his eligibility for cancellation of removal under 8 U.S.C. § 1229b(a). Under § 1229b(a), cancellation of removal is a discretionary form of relief that allows the Attorney General to cancel the removal order of a removable alien. To qualify for cancellation of removal, an alien must satisfy three elements: (1) the alien must have been "lawfully admitted for permanent residence for not less than five years," 8 U.S.C. § 1229b(a)(1); (2) the alien must have "resided in the United States continuously for 7 years after having been admitted in any status," *id.* § 1229b(a)(2); and (3) the alien may not have been "convicted of any aggravated felony," *id.* § 1229b(a)(3).

Torres gained lawful permanent residence on October 30, 1992, and so putatively satisfies the five-year requirement of § 1229b(a)(1). Nevertheless, under the so-called "stop-time" rule, the IJ found Torres ineligible for cancellation of removal under § 1229b(a)(2). The stop-time rule, as provided for in 8 U.S.C. § 1229b(d)(1), is a methodology to calculate an alien's continuous physical presence or residence in the United States and thus determines whether an alien has been here long enough to be eligible for cancellation of removal under § 1229b(a)(2).

Under the rule, time will stop accruing when the alien was (1) served with a notice to appear, or (2) when the alien committed certain removable offenses. *Id.* § 1229b(d)(1). Torres arrived in the United States on October 30, 1992 and his

-11-

removable offense occurred on August 6, 1999. The IJ held that the clock stopped ticking "about a month and [a] half, two months short" of the seven-year milestone of § 1229b(a)(2) and so denied him eligibility for cancellation. A.R. at 93.

Torres argues that the stop-time rule as applied to him lacks a rational basis and thus violates constitutional due process and equal protection principles. We find Torres's constitutional arguments unpersuasive because he has no protected liberty interest in the cancellation of his removal order and the challenged statutory provisions easily withstand rational basis review.

First, Torres alleges that his due process rights were violated because no rational basis exists for the stop-time rule for § 1229b(a)(2)'s "continuous presence" requirement when no such rule exists for § 1229b(a)(1)'s five-year requirement. The stop-time rule does not extend to § 1229b(a)(1) because that provision's language refers only to lawful admission as a permanent resident, while the stop-time rule applies only to "continuous residence or continuous physical presence." *See* 8 U.S.C. § 1229b(a)(1), (d)(1); *see also Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1197 (9th Cir. 2006). Although unclear from the briefs, we construe this argument to encompass both substantive and procedural due process claims. Second, Torres contends that an equal protection violation occurs when § 1229b(a)(2)'s application to aliens of "any status" impermissibly creates

disparate treatment of "first-time violation" and "repeat-law-breaking" aliens. We disagree with both contentions.

### 1.    *Procedural Due Process*

Before passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), suspension of deportation, as a purely discretionary form of relief, did not give rise to a liberty or property interest protected by the due process clause. *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204–05 (10th Cir. 2004) (examining the case law in several circuits), *vacated*, *United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004) (en banc). Nevertheless, "when facing deportation . . . aliens are entitled to procedural due process, which provides an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 1204.

Torres's claims are governed by the IIRIRA; nevertheless, the same point of law applies. While the cancellation of removal is not a liberty or property interest, aliens challenging eligibility for the cancellation of removal are entitled to an "opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* Torres received the process that was due, as evidenced by the IJ's colloquy

-13-

with Torres's counsel regarding the cancellation of removal,[6] and he was entitled

to no more.

2. *Equal Protection & Substantive Due Process*

In disposing of Torres's equal protection and substantive due process[7]

claims, we hold that the stop-time rule is rationally grounded. *See Appiah v. INS*,

202 F.3d 704, 709–10 (4th Cir. 2000) (applying rational basis review to

substantive due process and equal protection challenges to stop-time rule). With

the stop-time rule, "Congress intended to prevent aliens from continuing to

---

[6] The transcript for Torres's removal proceeding reveals that the IJ permitted Torres's counsel to present arguments in favor of eligibility for cancellation of removal.

> THE COURT: The Court set the matter down this afternoon for argument on whether the respondent qualified for cancellation of removal under 240A(a). Mr. Salvator [Torres's counsel], is there anything you want to state, sir?

> TORRES COUNSEL: Your honor, I've looked at the brief that the Service has submitted and I understand the argument that appears under the Service's interpretation of the law Mr. Torres is short about a month in terms of qualifying based on continuous presence and our argument to submit to the court is simply that there's no rational basis for distinguishing or cutting rather having a stop time provision for continuous presence and not having a stop time provision for lawful permanent residents.

> THE COURT: Okay.

A.R. at 92.

[7] Assuming arguendo that this claim requires any substantive due process review.

accumulate time toward the continuous residency requirement after INS had issued an order to show cause to an alien." *Sibanda v. INS*, 282 F.3d 1330, 1335 (10th Cir. 2002). By mandating the stop-time rule, Congress also removed an alien's incentive for prolonging removal hearings in order to become eligible for cancellation of removal. *Appiah*, 202 F.3d at 710. These purposes are valid governmental objectives.

Torres argues that the statutory scheme is irrational because the stop-time rule applies only to § 1229b(a)(2) (seven years of continuous residence) and not to § 1229b(a)(1) (five years from lawful admission) and so the incentive to prolong removal proceedings persists. We do not follow this logic. An alien must satisfy all three requirements of § 1229b(a) to be eligible for cancellation. If § 1229b(a)(2) cannot be satisfied, then the alien is ineligible for cancellation of removal notwithstanding the alien's compliance with § 1229b(a)'s other provisions. If an alien is short of the seven years required under § 1229b(a)(2), he is ineligible for cancellation of removal and so it does not matter that the alien's time counted toward permanent residency still accrues under § 1229b(a)(1). Accordingly, prolonging the removal proceedings will be unavailing.

Torres also complains that the stop-time rule lacks a rational basis because it (1) denies cancellation to lawfully admitted aliens who have not been continuously present in the country for seven years, (2) while granting eligibility

for aliens who may have been in the country unlawfully (and subsequently gained legal permanent residence) but have nonetheless been in the country for the requisite seven years.

We disagree that these classifications fail rational basis review. Section 1229b(a)(1) provides that aliens eligible for cancellation must have been lawfully admitted for permanent residence for at least five years. Congress may have determined that after five years of lawful residence and seven years of physical presence in the country, aliens should be eligible for cancellation of removal regardless of their prior unlawful presence in the country. While the policy objective may not be perfectly advanced by these provisions, only a reasonable relationship to the objective and the chosen means need be shown.

> The Supreme Court has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens, and it has long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments [is] largely immune from judicial control. Thus, in determining whether a rational basis exists for making distinctions between classes of aliens, we are especially deferential.

*Latu*, 375 F.3d at 1020 (internal quotations omitted). If Congress chooses to treat aliens who were formerly present illegally but legalized their status more favorably than those who commit drug crimes, it is not our role to second-guess the governmental objective.

-16-

Since we find no constitutional infirmity with § 1229b(a) and the stop-time rule, we need not address Torres's arguments about alternate interpretations of the stop-time rule.

B.    **Consular Notification**

Torres's final argument concerns the INS's failure to apprise him that he was entitled to communicate with Mexican consular or diplomatic officers under the Vienna Convention and immigration regulations.  Specifically, he contends that the BIA's failure violates Article 36(1)(b) of the Vienna Convention on Consular Relations[8] and 8 C.F.R. § 236.1(e).[9]  The BIA held that Torres's argument was waived because he failed to assert the issue before the IJ, and, in any event, Torres could not show that the violation resulted in any prejudice. A.R. at 46.

---

[8]  Article 36(1)(b) holds,

> With a view to facilitating the exercise of consular functions relating to nationals of the sending State: if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner.

21 U.S.T. 77, 100-101 (Apr. 24, 1963).  The United States is a signatory to the Vienna Convention, which was ratified by the United States on October 22, 1969. *See* Cong. Rec. 30997 (1969).

[9]  The regulation states, "Privilege of communication.  Every detained alien shall be notified that he or she may communicate with the consular or diplomatic officers of the country of his or her nationality in the United States."  8 C.F.R. § 236.1(e).

*1. The BIA's Procedural Bar*

The BIA determined that Torres's consular notification argument was not presented to the IJ and thus the argument was waived. "On a petition for review to this court[,] we will not permit the petitioner to circumvent proper procedural requirements of the BIA by presenting contentions that were procedurally barred by the Board." *Galvez Pineda v. Gonzales*, 427 F.3d 833, 837 (10th Cir. 2005). In this petition, Torres claims that a "review at the BIA is de novo, and the BIA cited no case law or regulation in support of the procedural default it applied for the first time in the Torres case." Aplt. Br. at 54–55. We find this contention unpersuasive.

The BIA has held that matters not raised before an IJ are not preserved on appeal. *See In re R- S- H-*, 23 I. & N. Dec. 629, 638 (B.I.A. 2003) ("The record does not reflect that the respondent raised any objections to the attorneys' presence at the hearing. Therefore, the respondent waived his opportunity to pursue this issue on appeal."); *In re Fidel Jimenez-Santillano,* 21 I. & N. Dec. 567, 570 n.2 (B.I.A. 1996) ("The record reflects, however, that this issue was neither raised before, nor ruled upon by the Immigration Judge. Therefore, we will not decide the issue, for it is not properly before us."); *Matter of Edwards,* 20 I. & N. Dec. 191, 196 n.4 (B.I.A. 1990) ("[B]ecause the respondent did not object to the entry of this document into evidence at the hearing below, it is not appropriate for him to object on appeal."); *Matter of Garcia-Reyes*, 19 I. & N.

Dec. 830, 832 (B.I.A. 1988) ("It is clear that objections themselves should be made on the record, or such objections will not be preserved for appeal.").

The BIA's waiver rule, as with most appellate bodies, is wholly consistent with its rules of practice. *See* 8 C.F.R. § 1003.1(d) ("The Board shall function as an appellate body charged with the review of those administrative adjudications under the Act."). As we have noted in analyzing the waiver doctrine in a different context:

> In order to preserve the integrity of the appellate structure, we should not be considered a "second-shot" forum, a forum where secondary, back-up theories may be mounted for the first time. Parties must be encouraged to give it everything they've got at the trial level. Thus, an issue must be presented to, considered and decided by the trial court before it can be raised on appeal.

*Tele-Communications, Inc. v. Commissioner*, 104 F.3d 1229, 1233 (10th Cir. 1997) (internal quotations and citations omitted).

These reasons apply with equal force to the BIA. Like circuit courts, the BIA's ability to engage in fact-finding is limited, 8 CF.R. § 1003(d)(3) ("The Board will not engage in de novo review of findings of fact determined by an immigration judge."), and the failure to raise an issue before the IJ properly waives the argument on appeal to the BIA. We thus agree that the doctrine of waiver can appropriately be applied by the BIA under its rules and precedent.[10]

_____

[10] The Government suggests that Torres also failed to exhaust administrative remedies under 8 U.S.C. § 1252(d)(1). Aple. Br. at 23–24. The statutory exhaustion requirement is different than the BIA's procedural bar. We

(continued...)

-19-

Since Torres failed to raise the regulatory right of consular notification before the IJ, the BIA properly concluded the issue was procedurally barred. For the same reasons as the BIA, we decline to reach the issue.

2.    *Effect of the Vienna Convention*

Whether Torres has a claim directly under Article 36(1)(b) of the Vienna Convention is a different matter. Torres invites us to recognize an enforceable right under the Vienna Convention that *cannot* be procedurally barred based on a pair of International Court of Justice (ICJ) rulings. *See Case Concerning Avena and other Mexican Nationals (Mex. v. U.S.)*, 2004 I. C. J. No. 128 (Judgment of Mar. 31) (precluding the application of American procedural default rules to Article 36 claims); *LaGrand Case (F.R.G. v. U.S.)*, 2001 I. C. J. 466 (Judgment of June 27) (same). We decline the invitation. Instead, we choose to follow, as we must, the dictates of the United States Supreme Court. *See* U.S. Const. Art III § 1.

Only last year, the Supreme Court noted that the ICJ's pronouncements are not "conclusive on our courts," but are only entitled to "respectful consideration." *Sanchez-Llamas v. Oregon*, 126 S. Ct. 2669, 2684–85 (2006). The Court then reaffirmed its previous holding in *Breard v. Greene*, 523 U.S. 371, 375 (1998) (dealing with state procedural bars), that, even if the Vienna Convention creates

[10](...continued)
need not reach the exhaustion issue since we find Torres's claim was "procedurally barred by the Board." *Galvez Pineda*, 427 F.3d at 837.

-20-

private enforceable rights,[11] such "claims under Article 36 of the Vienna Convention may be subjected to the same procedural default rules that apply generally to other federal-law claims." *Id.* The Court reasoned that procedural default rules are an important and indispensable part of our "adversary system, which relies chiefly on the parties to raise significant issues and present them to the courts in the appropriate manner at the appropriate time for adjudication." *Id.* at 2685.

Accordingly, regardless of whether Article 36(1)(b) gives Torres an enforceable right of consular notification, we hold that statutory and regulatory procedural bars apply to Torres's claim and the BIA's finding that he defaulted on his claim is conclusive.

We acknowledge that the Supreme Court's ruling in *Sanchez-Llamas* dealt specifically with state procedural default rules in the criminal setting. Yet, we do not see how the Court's rationale would dictate a different conclusion in federal removal proceedings. After all, removal proceedings before an IJ and the BIA "generally are adversarial and employ many of the same procedures used in Article III courts." *Frango v. Gonzales*, 437 F.3d 726, 728 (8th Cir. 2006); *see*

---

[11] And we have serious doubts that it does. *See, e.g., Cardenas v. Dretke*, 405 F.3d 244 (5th Cir. 2005) (the Vienna Convention does not confer individually enforceable private rights); *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001) (same); *State v. Martinez-Rodriguez*, 33 P.3d 267 (N.M. 2001) (same); *Oregon v. Sanchez-Llamas*, 108 P.3d 573 (Ore. 2005) (same); *Shackleford v. Commonwealth,* 547 S.E.2d 899 (Va. 2001) (same).

-21-

*also Detroit Free Press v. Ashcroft*, 303 F.3d 681, 699 (6th Cir. 2002) ("It is clear that removal proceedings are decidedly adversarial."); *North Jersey Media Group, Inc. v. Ashcroft,* 308 F.3d 198, 223–24 (3d Cir. 2002) (Scirica, J., dissenting); *Etchu-Njang v. Gonzales*, 403 F.3d 577, 583 (8th Cir. 2005). In this case, Torres was subject to an adversarial removal proceeding and so BIA procedural bars rightfully applied.

In fact, the nature of removal proceedings militates more strongly for the application of procedural bars than in the criminal context. After all, a removal proceeding is a civil proceeding, not a criminal one, and the demands of constitutional or legal safeguards are accordingly less strict. *Cf. United States v. Valdez*, 917 F.2d 466, 469 (10th Cir. 1990).

We close with our oft-noted admonition, "it has long [been] recognized [that] the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments [is] largely immune from judicial control." *Latu*, 375 F.3d at 1020. If the political branches do not wish to exclude Article 36(1)(b) claims from agency procedural bars, it is not for us to say differently.

In sum, we find no error in the BIA's conclusion that Torres's consular notification claim was waived.

## IV. Conclusion

For the foregoing reasons, we DISMISS Torres's appeal in part for lack of jurisdiction and we DENY in part for lack of meritorious claims. The BIA's order of removal is AFFIRMED.

---