**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FNU LAMIJAN,

      Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

      Respondents.

No. 06-9586
(No. A79-477-401)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **HENRY** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

      Petitioner Jason Lamijan, a citizen of Indonesia, seeks review of a final

order of removal issued by the Board of Immigration Appeals (BIA) affirming the

denial of his applications for asylum and restriction on removal under the

Immigration and Nationality Act and protection under the United Nations

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Convention Against Torture (CAT).[1]  We affirm the BIA's ruling on asylum and restriction on removal.  For lack of jurisdiction, we dismiss Mr. Lamijan's claim concerning his request for CAT relief.

## BACKGROUND

Mr. Lamijan entered the United States as a visitor and failed to depart upon expiration of his visa.  When he sought asylum, restriction on removal, and CAT relief, he was placed in removal proceedings.  He conceded removability and, at the hearing before the immigration judge (IJ), testified about his religious and military history and anticipated problems if he returned to Indonesia.

Mr. Lamijan was raised as a Muslim but became interested in the Christian religion while attending the Indonesian Naval Academy.  After graduating from the Academy in 1989, he served in the Marine Corps for eleven years as an officer and reached the rank of captain in 1995.  According to Mr. Lamijan's testimony, his increasing identification with the Christian religion caused him difficulties in the military service.  Because he protested that some of the military's actions and techniques were contrary to his principles, his superiors warned him in 1998 that he would not be promoted past his current rank.

---

[1]      After his arrival in the United States, petitioner was baptized with the first name of Jason.  Before that time, like many Indonesians, he did not have a first name.  His name is shown in the caption as FNU LAMIJAN.  FNU stands for first name unknown.  In this order and judgment, the court will refer to petitioner as Mr. Lamijan.

Starting in 1998, Mr. Lamijan began to lay his plans for leaving Indonesia. In the belief that he would have difficulties in obtaining a passport and visa as an unmarried military man, he developed evidence of a sham marriage and civilian status. In early June 2000, Mr. Lamijan made a formal request to resign from the armed forces. When the request was denied, he went absent without leave (AWOL) and departed with a woman purporting to be his wife.

Mr. Lamijan arrived in this country on June 23, 2000, on a nonimmigrant visitor visa, with permission to remain until December 23, 2000. He did not leave when the visa expired. During his stay in the United States, he has been baptized and married to a Christian Indonesian, with whom he has two children. He filed his applications for relief from removal on May 31, 2001.

Mr. Lamijan attempted to demonstrate the prospect of future persecution by documenting general anti-Christian conditions in Indonesia and by describing his specific situation with the military. He testified that, about a year and a half after he left Indonesia, he learned that his father, mother, and brothers were arrested at their home in East Java and interrogated in Jakarta about allegations of his selling state secrets. If he returned to Indonesia, Mr. Lamijan expected to be subjected to harsh punishment for being AWOL.

Though the IJ expressed doubts about certain aspects of Mr. Lamijan's account, the IJ decided to "base [his] decision based only on the respondent's own testimony." Admin. R. at 49. The IJ concluded that Mr. Lamijan is not entitled

to asylum, because he had not shown past persecution or a well-founded fear of future persecution based on religion or political expression. As for Mr. Lamijan's position with the military, the IJ observed that "Indonesia has the right to govern its military, require its servicemen to perform in accordance with their law and their applications of military [justice]" and that Mr. Lamijan "is . . . afraid to go back and [] face [the military] punishment he would receive for desertion or for being absent without leave." *Id.* at 54. The IJ denied the applications for asylum and restriction on removal. Without further discussion he also denied the request for relief under the CAT.

Mr. Lamijan appealed to the BIA, asserting that the IJ's decision should be reversed for three reasons: (1) a failure to consider all of his testimony and documentary evidence on the persecution of Christians in Indonesia; (2) an erroneous finding that he had not established a well-founded fear of future persecution based on religion; and (3) a failure to recognize that Indonesian authorities viewed his refusal to serve in the military as an expression of his religious and political beliefs. The BIA noted that, while serving in the Indonesian military, Mr. Lamijan had been a practicing Christian for ten years without suffering any persecution. The BIA agreed with the IJ's finding that "any reasonable punishment incurred by [Mr. Lamijan] upon his return to Indonesia for being AWOL from the Indonesian Marines, pursuant to that country's generally applicable laws regarding the performance of military service, would constitute

-4-

prosecution, not persecution." Admin. R. at 3 (citations omitted). Accordingly, the BIA upheld the IJ's decision and dismissed the appeal. Mr. Lamijan now seeks review in this court.

## DISCUSSION

Although we concentrate our review on the BIA's single-member order affirming the IJ's decision, "we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007) (quotations, citations, and alterations omitted)."

> Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole. Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary.

*Id.* at 788-89 (quotations, citations, and alterations omitted).

To be considered for asylum, an applicant must prove that he meets the definition of "refugee"– that is, that he faces government-related "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *id.* § 1158(b)(1). Persecution means "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (internal quotation marks omitted); *see In re S-P-*, 21 I. & N. Dec. 486, 489 (BIA 1996)

-5-

("Persecution for 'imputed' grounds (e.g., where one is erroneously thought to hold particular political opinions or mistakenly believed to be a member of a religious sect) can satisfy the 'refugee' definition.").

On appeal, Mr. Lamijan claims he demonstrated both past religious persecution and a well-founded fear of future persecution based on religion and imputed political opinion. Our record review, however, does not reveal any compelling evidence in support of his asylum claim. For ten years, Mr. Lamijan was a practicing Christian while serving in the Indonesian armed forces, without suffering any persecution. He testified to discriminatory actions, such as denial of promotions above the level of captain, but did not describe any incidents of persecution. And as to future persecution, Mr. Lamijan showed the risk of arrest and detention upon his return to Indonesia due to his AWOL status, not to his religion or imputed political opinion. "[P]unishment for desertion . . . does not constitute a protected ground for the purpose of asylum eligibility." *Abdel-Rahman v. Gonzales,* No. 06-1619, 2007 WL 2004462, at *7 (4th Cir. July 12, 2007) (citation omitted). The BIA decision is supported by substantial evidence in the record and we will not disturb it.

Mr. Lamijan further asserts that his case should be remanded because the IJ failed to make detailed findings on his request for restriction on removal. This argument is unavailing. Eligibility for restriction on removal requires a clear probability that the applicant's "life or freedom would be threatened in [the

proposed country of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). "Applicants who cannot establish a well-founded fear under asylum standards will necessarily fail to meet the higher burden of proof required for [restriction on removal]." *Uanreroro v. Gonzales,* 443 F.3d 1197, 1202 (10th Cir. 2006).

Finally, Mr. Lamijan argues that the IJ committed reversible error in failing to provide an explicit discussion of his request under the CAT, which restricts removal to a particular country if "it is more likely than not that the petitioner will be tortured if removed to that country," without concern for "the reasoning of the persecution." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277-78 (10th Cir. 2005). Mr. Lamijan's "failure to raise [this CAT] issue on appeal to the Board constitutes failure to exhaust administrative remedies with respect to that question and deprives the Court of Appeals of jurisdiction to hear the matter." *Akinwunmi v. INS*, 194 F.3d 1340, 1341 (10th Cir. 1999) (per curiam) (internal quotation marks omitted); *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1017 (10th Cir. 2007) ("[W]e have jurisdiction only over those claims that were presented to the BIA and were properly appealed to this court . . . .). We must dismiss this claim.[2]

---

[2]    We note that Mr. Lamijan may be prosecuted and punished in Indonesia for going AWOL. The record, however, falls far short of showing probable torture. The recent case of *Abdel-Rahman v. Gonzales,* No. 06-1619, 2007 WL 2004462,

(continued...)

**CONCLUSION**

Mr. Lamijan's petition for review is therefore DENIED in part and DISMISSED in part.

Entered for the Court


Wade Brorby
Senior Circuit Judge

---

2(...continued)
illustrates this distinction.  In that case, the IJ denied the asylum and restriction on removal applications of an officer who had deserted from the Egyptian army, but granted his request for protection under the CAT.  At the hearing, an expert testified that "torture is systemic and ongoing in Egypt[,] that the Egyptian legal system will not protect [the petitioner] from it[, and] confirmed that [petitioner] will be treated by the Egyptian authorities as a defector and will be subjected to severe torture during the interrogation process. . . ." *Id*. at 2007 WL 2004462, *3 (quotation omitted).  Based on this testimony,  the IJ concluded that "it is more likely than not that upon his return to Egypt, [the petitioner] would be detained and tortured by the Egyptian government to punish him for deserting the Egyptian army and to extract information from him on what he may have revealed while in the United States." *Id*. at *1.  The BIA upheld the CAT determination on cross-appeal.  In contrast, Mr. Lamijan provided no definitive evidence that the Indonesian government would subject him to torture upon his return.