**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3020
_____

LENA DIANA LIM,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-252-436)
Immigration Judge:  Honorable Miriam K. Mills

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 25, 2011
Before:  SCIRICA, SMITH and VANASKIE, <u>Circuit</u> <u>Judges</u>

(Opinion filed March 28, 2011)
_____

OPINION
_____

PER CURIAM

    Petitioner Lena Lim seeks review of the Board of Immigration Appeals' ("BIA")

final order of removal.  For the following reasons, we will deny the petition for review.

1

I.

Lim is a 69-year-old Indonesian citizen who entered the United States in April 2000 on a visitor's visa. Her husband left Indonesia a few weeks later and entered the United States in May 2000.[1] Their adult children live in China. In 2008, Lim was served with a notice to appear charging her as removable under 8 U.S.C. § 1227(a)(1)(B). Lim conceded removability, but requested withholding of removal or, in the alternative, voluntary departure.

Lim's application for withholding of removal was based on alleged persecution that she suffered in Indonesia due to her Chinese ethnicity and because she is a Christian. Her claim centered on two incidents. First, in 1998, Lim encountered three people who cut her wrists with a "curved knife" when she was in a pedicab en route to the market. She reported the incident to the police, who did not follow up. She also went to the doctor, who examined the cut but determined that she did not need stitches. Second, in 1999, Lim was confronted by around 30 people who were carrying clubs while she was riding her bicycle. She threw down her bicycle, ran away and got help. She later discovered that her bicycle was broken. Lim was not injured in this incident, but was called "Chinese."

Lim asserted that these incidents caused her to fear living in Indonesia. She nevertheless continued practicing her religion and asserted that she was not afraid when

_____

[1] Lim's husband filed an application for withholding of removal, which was granted in 2006.

2

people threw things at her church. Lim developed medical problems "from the stress of living in that environment." Her physician informed her that it would be best to leave Indonesia, which prompted her to come to the United States.

In addition, Lim asserted that in May 1998, during the widespread riots that occurred in Indonesia, her's and her husband's business was damaged, causing them to lose around $100,000. Thereafter, Lim's husband started having health problems, which his doctor attributed to post-traumatic stress disorder. The doctor recommended that Lim's husband recover in the United States. Lim acknowledged that she and her husband came to the United States because her husband was sick. She arrived before he did so that she could "prepare the house." Lim testified that she did not want to return to Indonesia because: "I have nothing in Indonesia. I do not have family. I do not have friends or anything."

The Immigration Judge ("IJ") denied relief on January 22, 2009, concluding that although Lim was credible, she failed to meet her burden of proof for withholding of removal, as she did not establish it is more likely than not that she would be harmed based on her ethnicity or religion, if she returns to Indonesia. The IJ explained that the 1998 and 1999 incidents did "not rise to the level of seriousness to constitute persecution." She also found that Lim came to "the United States for health and business reasons, not tied to an asylum ground, but rather to conditions of civil unrest which adversely affected her husband's business." Because Lim did not establish past persecution, she did not receive the presumption of a well-founded fear of future

3

persecution, and the IJ determined that she did not establish such a fear through her testimony or documentary evidence.

The BIA dismissed Lim's appeal. It agreed that the 1998 and 1999 incidents did not rise to the level of persecution, and noted that Lim testified that "she came to the United States for a vacation and for reasons relating to her husband's health." The BIA also agreed that Lim did not establish a clear probability of future persecution. It explained that although Lim argued otherwise, the background evidence "does not sufficiently establish that the threat of harm to ethnic Chinese or Chinese Christians in Indonesia by the government, or by forces the government is unable to control, is so systematic, pervasive, or organized so as to amount to a pattern or practice of persecution." The BIA also noted that Lim testified that she did not want to return to Indonesia due to her age and lack of family in Indonesia.

Before the BIA, Lim also argued that she was persecuted due to the extreme economic and psychological hardships that were caused to her husband. The BIA acknowledged that Lim's husband was granted withholding of removal and that Lim testified that she was impacted by the loss of her husband's business as a result of the 1998 riots. However, because the economic deprivation did "not appear to have been the basis of [Lim's] withholding claim before the Immigration Judge," the BIA declined to consider the argument.

Lim, proceeding pro se and in forma pauperis, now petitions for review of the BIA's final order of removal.

II.

4

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). The BIA's decision is reviewed under the substantial evidence standard and will be upheld "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir. 2003) (internal citation omitted).

Substantial evidence supports the BIA's conclusion that Lim failed to sustain the burden of proof required to obtain withholding of removal. As the BIA determined, the two incidents of harm, along with the problems at Lim's church, do not rise to the level of persecution. *See Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"); *cf. Toure v. Att'y Gen.*, 443 F.3d 310 (3d Cir. 2006); *Voci v. Gonzales*, 409 F.3d 607 (3d Cir. 2005).

Further, the BIA justifiably declined to consider Lim's claim of persecution based on economic deprivation.[2] Although Lim testified about the destruction of her husband's business and its effects on her husband's health, she did not directly raise a claim that this constituted persecution. Rather, it appears that the testimony regarding the destruction of the business served as the explanation for Lim's and her husband's decision to come to the United States.

---

[2] The BIA has authority to prescribe its own procedural rules, 8 C.F.R. § 1003.1(d)(4), and has determined that matters not raised before the IJ are waived. *See, e.g.*, *In re R-S-H*, 23 I. & N. Dec. 629, 638 (BIA 2003); *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1023 (10th Cir. 2007) (recognizing that the waiver rule "is wholly consistent with [the BIA's] rule of practice" as an appellate body). Here, although the BIA did not explicitly state that Lim's economic deprivation argument was waived, that is what we understand its footnote to mean.

Substantial evidence also supports the BIA's decision that the record does not establish that Lim's life or freedom would be threatened if she returned to Indonesia due to a pattern or practice of persecution against ethnic Chinese or Christians. *See* 8 C.F.R. § 208.13(b)(1) & (2)(iii)(A). *See also Wong v. Att'y Gen.*, 539 F.3d 225, 233-34 (3d Cir. 2008) (discussing recent State Department reports concerning the treatment of Chinese Indonesians).

In sum, the evidence does not compel us to overturn the BIA's decision to dismiss Lim's appeal, and for the foregoing reasons, we deny the petition for review.