FILED
United States Court of Appeals
Tenth Circuit

June 10, 2021

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JOSE NELSON NAVARRO HERCULES,

Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,*

Respondent.

No. 20-9604
(Petition for Review)

_____

## ORDER AND JUDGMENT**

_____

Before **HOLMES**, **MATHESON**, and **McHUGH**, Circuit Judges.

_____

Petitioner, Jose Nelson Navarro Hercules, a Salvadoran citizen, fled gang

violence in his home country and arrived in the United States in 2006. A few years

later, the Department of Homeland Security began removal proceedings against him.

_____

* Merrick B. Garland has been substituted for Robert M. Wilkinson as
Respondent. *See* Fed. R. App. P. 43(c)(2).

** After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

He conceded the charge of inadmissibility and applied for asylum, restriction on removal,[1] and protection under the United Nations Convention Against Torture. An immigration judge denied his applications, and the Board of Immigration Appeals ("Board") affirmed. Mr. Navarro Hercules now seeks review of the Board's decision. We deny his petition in part and dismiss it in part.

## I. AGENCY PROCEEDINGS

In his testimony to the immigration judge, Mr. Navarro Hercules explained why he fears returning to his home country. Starting in 2002, he worked on a bus in El Salvador, collecting fares while his brother-in-law drove. Two years later, armed gang members entered the bus and robbed those on board. They forced Mr. Navarro Hercules off the bus, beat him up, and demanded more money. They threatened to kill anyone who said anything about the attack. Mr. Navarro Hercules later heard from a police officer that the people who might have committed the bus robbery had been caught robbing a jewelry store. ROA, Vol. 1 at 139.

About seven months after the bus robbery, gang members attacked the bus again when the bus stopped for a break en route. Mr. Navarro Hercules was resting in the bus while his brother-in-law went into a nearby town. Gang members attacked the brother-in-law and eventually surrounded the bus, accusing Mr. Navarro Hercules of causing some of their fellow gang members to be jailed. They vandalized the bus

---

[1] Restriction on removal used to be called "withholding of removal." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1006 n.1 (10th Cir. 2012) (quotations omitted).

2

and threatened to decapitate Mr. Navarro Hercules. The attack ended when a local business owner convinced the gang members to leave. When police arrived at the scene, they initially blamed Mr. Navarro Hercules and his brother-in-law for the disturbance. Eventually, though, the police told Mr. Navarro Hercules that he "ha[d] to go" and that they could not protect him. *Id.* at 144.[2]

Mr. Navarro Hercules never worked on a bus again. He fled to a different town in El Salvador where he worked on a banana orchard. Although there were gangs in this town, too, he avoided problems by remaining on the orchard and not going out. He stayed there for about a year and a half before traveling to the United States, where he found work with a farmer.

Mr. Navarro Hercules's job took him to various places in the Midwest. One night in Indiana he ran into someone who had grown up with him in El Salvador. This man had joined a gang and unsuccessfully tried to recruit Mr. Navarro Hercules when they were young. He threatened to make Mr. Navarro Hercules "pay" if he returned to El Salvador, accusing him of causing his brothers (who are also gang members) to be jailed. *Id.* at 151.

The immigration judge found Mr. Navarro Hercules's testimony credible. But the judge further found that Mr. Navarro Hercules did not timely apply for asylum

_____

[2] Mr. Navarro Hercules testified that the police said they could not "really care for" him. ROA, Vol. 1 at 144. In his brief, he asserts the police told him that "they could not protect him." Pet'r's Br. at 39. In our view, he fairly characterizes his testimony.

3

and otherwise did not qualify for asylum, restriction on removal, or protection under the Convention Against Torture. The Board adopted and affirmed the immigration judge's decision.

## II. **DISCUSSION**

We have jurisdiction to review a final order of removal. 8 U.S.C. § 1252(a)(1). But our jurisdiction extends only to claims that were exhausted before the agency. *See Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1017 (10th Cir. 2007). A noncitizen must "present the *same specific legal theory* to the [Board] before he or she may advance it in court." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010).

When, as here, a single Board member issued a brief order affirming the immigration judge's decision, we generally confine our review to the Board's decision so long as it "contains a discernible substantive discussion." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). But because the Board explicitly adopted the immigration judge's decision, we may consult that decision as well. *See Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).

We review the Board's legal conclusions de novo. *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). And we review its factual findings for substantial evidence, treating those findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quotations omitted).

4

A. *Asylum*

To receive asylum, an applicant must show he or she is a "refugee," 8 U.S.C. § 1158(b)(1)(B)(i). A refugee is someone who is unable or unwilling to return to their country because of persecution or a well-founded fear of persecution on account of any of five protected grounds: race, religion, nationality, political opinion, or membership in a particular social group.[3] *Id.* § 1101(a)(42); *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015). One way to obtain refugee status is to show past persecution on account of a protected ground, which creates a rebuttable presumption of a well-founded fear of future persecution on account of such a ground. *Rodas-Orellana*, 780 F.3d at 986. Another way to obtain refugee status, even without proving past persecution, is to show a subjectively genuine and objectively reasonable fear of future persecution on account of a protected ground. *See Ritonga v. Holder*, 633 F.3d 971, 976 (10th Cir. 2011).

Mr. Navarro Hercules claimed a well-founded fear of persecution on account of his membership in two particular social groups—former bus employees and the working poor. The Board found the gangs that Mr. Navarro Hercules fears "were

---

[3] An applicant who lacks a well-founded fear of persecution can still obtain refugee status by showing "a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 208.13(b)(1)(iii)(B); *see also Krastev v. I.N.S.*, 292 F.3d 1268, 1271 (10th Cir. 2002). Mr. Navarro Hercules argues the Board erred by failing to recognize that more factual findings were necessary to determine if he could qualify for asylum based on "other serious harm" that he might suffer in El Salvador. Pet'r's Br. at 43 (quotations omitted). But he did not exhaust his claim for relief under this theory. We therefore lack jurisdiction to consider the claim and dismiss the part of his petition raising it.

5

motivated by ordinary criminal motives" and that they were not "motivated to harm him on account of his membership in a particular social group." ROA, Vol. 1 at 3. The government argues that he has abandoned any objection to this finding by failing to adequately challenge it in his brief.

We choose instead to uphold the Board's finding on the merits. Persecution is on account of a protected ground if the ground "was or will be at least one central reason for persecuting the applicant." § 1158(b)(1)(B)(i). The record does not compel the conclusion that gang members were or would be motivated to harm Mr. Navarro Hercules on account of his membership in a particular social group. Instead, he testified that the second bus attack occurred because the gang members blamed him and his brother-in-law for the jailing of other gang members. And the Salvadoran who threatened him in Indiana expressed the same motivation. This evidence supports the immigration judge's finding that any danger Mr. Navarro Hercules would face in El Salvador would result from the perception that he disrupted and resisted "the gang's criminal operations." ROA, Vol. 1 at 59. That same evidence supports the Board's finding that the gangs robbed, threatened, and tried to kill Mr. Navarro Hercules based on "ordinary criminal motives." *Id.* at 3.

Because substantial evidence supports the Board's finding about the gang members' motives, we need not consider whether Mr. Navarro Hercules's proposed

particular social groups are cognizable.[4]  Even if they were, he would remain

ineligible for asylum because of the Board's finding that he did not show a nexus

between the harm he fears and a protected ground.

We lack jurisdiction over Mr. Navarro Hercules's remaining challenge to the

Board's asylum decision—that the Board erred by failing to consider whether the

threat he received in Indiana should excuse the tardiness of his application.[5]  *See*

§ 1158(a)(2)(D) (excusing late asylum applications in cases involving changed or

extraordinary circumstances).  He did not present this theory to the immigration

judge or the Board, so he did not exhaust the argument.  We therefore dismiss the

part of his petition raising it.

B.  *Restriction on Removal*

To qualify for restriction on removal, an applicant must show a clear

probability of persecution on account of a protected ground.  *See Rodas-Orellana*,

780 F.3d at 987.  This burden is greater than the burden for an asylum claim:

"Asylum requires proof of a well-founded fear of persecution whereas restriction

---

[4] The government argues that we lack jurisdiction to decide whether the proposed social groups are cognizable because the Board did not address that question.  But although the Board did not expressly address the validity of the proposed groups, it adopted the immigrations judge's decision without qualification.  And the immigration judge's decision addressed the validity of the groups, at least to some extent.  For that reason, we have jurisdiction to decide whether Mr. Navarro Hercules's proposed social groups are valid, but our analysis makes deciding that question unnecessary.

[5] Mr. Navarro Hercules's brief describes the threat as having occurred in Chicago, but he testified that it occurred in Indiana.

requires proof that persecution is more likely than not." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (quotations omitted). So Mr. Navarro Hercules's inability to meet the asylum burden necessarily precluded him from meeting the greater restriction burden. *See Rodas-Orellana*, 780 F.3d at 987. We thus deny his challenge to the Board's finding that he is not eligible for restriction on removal.

## C. *The Convention Against Torture*

The Convention Against Torture "prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013) (quotations omitted). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). This standard does not require the government's actual knowledge or willful acceptance; willful blindness is enough. *Karki*, 715 F.3d at 806.

We cannot disturb the Board's finding that Mr. Navarro Hercules did not show that, if he returns to El Salvador, "it is more likely than not he will be tortured . . . with the consent or acquiescence (including willful blindness) of a public official." ROA, Vol. 1 at 4. The record shows that gangs pose a danger in El Salvador, including evidence that gangs control and restrict people's movement in certain

territory.[6]  Also, Mr. Navarro Hercules testified that, following the second bus attack, an officer told him that police could not protect him.  But the record also shows that the Salvadoran government has made efforts to arrest and imprison gang members.  This evidence undermines Mr. Navarro Hercules's reliance on *Karki*, in which the evidence showed that the government in the country of removal "regularly fail[ed] to take action to prevent or punish . . . acts of torture."  715 F.3d at 807.  By contrast, the record here supports the Board's finding.

Mr. Navarro Hercules's challenges to the agency's treatment of the evidence are unavailing.  We see no support for his assertion that the Board failed to consider certain evidence.  That the Board did not mention particular evidence does not mean it did not consider it.  The Board does not need "to discuss every piece of evidence." *Hadjimehdigholi v. I.N.S.*, 49 F.3d 642, 648 n.2 (10th Cir. 1995).  Mr. Navarro Hercules also argues that the Board relied on the immigration judge's mischaracterization of his testimony about law enforcement's role in investigating the bus robbery and in protecting him when the gang later attacked the bus again.  But the question for us is not whether the immigration judge mischaracterized parts of the testimony.  Rather, the question is whether substantial evidence supports the Board's finding that Mr. Navarro Hercules would not likely be tortured in El Salvador with the acquiescence of a public official.  It does.

---

[6] Mr. Navarro Hercules contends that the gangs' control of territory renders them "quasi-governmental groups."  Pet'r's Br. at 42.  He did not present this theory to the Board, so we lack jurisdiction to consider it.

9

D. *Requests for Remand*

Throughout his brief, Mr. Navarro Hercules argues the Board did not adequately explain its decision and asks us to remand the case for the Board to provide additional reasoning.  We decline to do so.  The Board adopted the immigration judge's more detailed decision.  The Board's decision permits "meaningful appellate review."  *See Maatougui v. Holder*, 738 F.3d 1230, 1243 (10th Cir. 2013).

To the extent Mr. Navarro Hercules asks us to remand the case for the agency to consider claims that he failed to raise in his removal proceedings, we deny that request.  He offers no authority suggesting that a remand is appropriate for that purpose.

## III.  CONCLUSION

We deny the petition in part and dismiss it in part.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge