NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0289n.06
Filed: April 18, 2005

**Nos. 03-3550, 04-3065**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SOBHY SHEHATA HANNA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITIONS FOR REVIEW OF |
| | ) | ORDERS OF THE BOARD OF |
| ALBERTO R. GONZALES, Attorney | ) | IMMIGRATION APPEALS |
| General, | ) | |
| | ) | |
| Respondent. | | |

Before: BOGGS, Chief Judge; COOK, Circuit Judge; BEER, District Judge.[*]

COOK, Circuit Judge. Sobby Shehata Hanna petitions for review of an order of removal and an order denying his motion to reopen proceedings before the BIA. Because substantial evidence supports the IJ's removal decision and because the BIA correctly denied Hanna's motion to reopen, we deny the petitions for review.

I

Hanna, an Egyptian national, first arrived in the United States in 1982. Shortly after his arrival, Hanna married an American citizen, Elsie Rasnick. That marriage did not endure—the couple separated on their wedding day when Rasnick informed Hanna she was pregnant with

---

[*]The Honorable Peter Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

another man's child. Importantly, Hanna and Rasnick never lived together.

Attempting to reap the benefit of his marriage to Rasnick, Hanna applied for adjustment of status, noting, untruthfully, on his application that he lived with Rasnick. Rasnick later withdrew the visa petition supporting Hanna's application, prompting the INS eventually to deny the application. In the meantime, Hanna divorced Rasnick and returned to Egypt.

Hanna returned to the United States in 1987. On his 1987 immigrant visa application, Hanna answered "No" to the question whether he was an alien who had "procure[d] or attempt[ed] to procure a visa or other documentation by fraud or willful misrepresentation." The INS—presumably failing to discover Hanna's 1982 attempt to gain permanent status—granted him admission as the child of a lawful permanent alien resident, his mother.

About ten years later, the INS, clued by facts unknown to us and irrelevant to our decision, discovered Hanna's 1982 application and therefore charged him with removability as an alien who "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter." 8 U.S.C. § 1182(a)(6)(C)(i). *See also* 8 U.S.C. § 1227(a)(1)(A). The IJ found Hanna removable for materially misrepresenting on his 1982 application that he lived with Rasnick, and the BIA dismissed Hanna's appeal.

Hanna then moved the BIA to reopen his case, alleging that his attorney had rendered ineffective assistance by failing to file for a waiver of removal. The BIA denied Hanna's motion

to reopen, holding that even if Hanna were eligible for a waiver, Hanna lacked a liberty interest

protected by the Due Process Clause of the Fifth Amendment given the discretionary nature of the

waiver. In the absence of such an interest, Hanna had no constitutional right to effective assistance

of counsel. Hanna petitions for review of both BIA decisions.

II

A. Removal

This court reviews removal orders under the familiar substantial-evidence standard. 8 U.S.C.

§ 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator

would be compelled to conclude to the contrary . . . ."). Here, substantial evidence supports the IJ's

conclusion that Hanna willfully misrepresented a material fact when he sought to obtain status as

a permanent resident. That is, Hanna claimed, under oath, that he lived with Rasnick when he did

not.

Whether a fact is material depends on "whether the misrepresentation or concealment was

predictably capable of affecting, *i.e.*, had a natural tendency to affect, the official decision." *Kungys

v. United States*, 485 U.S. 759, 771 (1988). As the immigration judge correctly noted, the fact that

Hanna did not reside with his wife was material because "[i]f the INS were aware that the parties

did not reside together, it would result in an inquiry into the validity of this relationship."

Hanna, however, contends that because a friend filled out his 1982 application, he never

knew its contents, and thus he did not *willfully* misrepresent any fact. But, assuming Hanna's story

to be true—a generous assumption given the overwhelming evidence demonstrating the Hanna-

Rasnick marriage to be a sham—the law still charges Hanna with knowledge of the application's

contents. Hanna signed, under oath, his 1982 adjustment-of-status application. His failure to

apprise himself of the contents of this important document constituted deliberate avoidance—an act

the law generally does not recognize as a defense to misrepresentation. *See Bautista v. Star Cruises*,

396 F.3d 1289, 1301 (11th Cir. 2005) (noting that one "who has executed a written contract and is

ignorant of its contents cannot set up that ignorance to avoid the obligation") (internal quotation

marks and citation omitted); *United States v. Puente*, 982 F.2d 156, 159 (5th Cir. 1993) (holding

"a defendant who deliberately avoids reading the form he is signing cannot avoid criminal sanctions

for any false statements contained therein").

## B. Reopening

In a separate reopening proceeding before the BIA, Hanna claimed he was denied effective

assistance of counsel. Hanna argues that counsel's failure to seek a discretionary waiver of removal

under 8 U.S.C. § 1227(a)(1)(H) violated his Fifth Amendment right to counsel. We disagree,

because Hanna possessed no constitutionally protected liberty interest in receiving a *discretionary*

waiver.

To prove an ineffective-assistance-of-counsel claim under the Fifth Amendment's Due

Process Clause, an alien must prove that but for his attorney's errors he "would have been *entitled*

to continue residing in the United States." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699-700 (6th Cir. 2001) (emphasis added). But no due process violation occurs when an attorney's errors cause an alien to be denied discretionary relief. *Id.* at 700 ("The failure to be granted discretionary relief does not amount to a deprivation of a liberty interest.") (citing *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999)). And 8 U.S.C. § 1227(a)(1)(H)—providing that removal of an alien found inadmissible for attempting to procure a visa or other documentation through fraud or material misrepresentation "may, in the discretion of the Attorney General, be waived"—affords only discretionary relief. *See INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996) (concluding that the nearly identical predecessor of 8 U.S.C. § 1227(a)(1)(H) imposed no limitation on what the Attorney General could consider when deciding whether to grant discretionary relief). Thus, the failure of Hanna's attorney to file for a waiver of removal did not violate Hanna's due process rights, and the BIA did not err in denying Hanna's motion to reopen.

Hanna, however, claims he is not contesting "the denial of a form of discretionary relief," but instead challenging "his attorney's failure to file for such relief before the Immigration Court," which deprived him of even being considered for the waiver. But this distinction lacks constitutional significance. Without a cognizable liberty or property interest at stake, a due process violation cannot occur. *See Tefel v. Reno*, 180 F.3d 1286, 1301 (11th Cir. 1999) ("Thus, just as Plaintiffs enjoy no 'liberty or property' interest in their expectancy of receiving suspension of deportation, they enjoy no 'liberty or property' interest in being eligible to be considered for suspension.").

## III

For the foregoing reasons, we deny the petitions for review.