# Matter of A.J. VALDEZ, Respondent
# Matter of Z. VALDEZ, Respondent

*Decided December 20, 2018*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien makes a willful misrepresentation under section 212(a)(6)(C)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(C)(i) (2012), when he or she knows of or authorizes false statements in an application filed on the alien's behalf.

(2) An alien's signature on an immigration application establishes a strong presumption that he or she knows of and has assented to the contents of the application, but the alien can rebut the presumption by establishing fraud, deceit, or other wrongful acts by another person.

FOR RESPONDENT: Matthew B. Weber, Esquire, Miami, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: Kyung Auh, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS and LIEBOWITZ, Board Members; MORRIS, Temporary Board Member

MALPHRUS, Board Member:

In a decision dated July 3, 2017, an Immigration Judge found the respondents removable under section 237(a)(1)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(A) (2012), as aliens who were inadmissible at the time of adjustment of status under section 212(a)(6)(C)(i) of the Act, 8 U.S.C. § 1182(a)(6)(C)(i) (2012), because of their fraud or willful misrepresentation of a material fact.[1] The respondents have appealed from that decision. The appeal will be dismissed.

---

[1] The respondents were also charged with removability under section 237(a)(1)(A) of the Act based on their inadmissibility under section 212(a)(7)(A)(i)(I), as aliens who did not possess valid immigrant visas, and under section 237(a)(1)(B), as nonimmigrants who remained in the United States longer than permitted. The Immigration Judge did not sustain the charge based on section 212(a)(7)(A)(i)(I) and the Government has not appealed that issue, so it is deemed waived. *Matter of N-A-I-*, 27 I&N Dec. 72, 73 n.1 (BIA 2017). Given our disposition of this case, we need not address the respondents' challenge to the Immigration Judge's finding that they are removable under section 237(a)(1)(B).

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondents, a husband and wife, are natives and citizens of Venezuela who were admitted to the United States on March 3, 1993, as nonimmigrant visitors with authorization to remain until September 2, 1993.[2] On December 17, 1997, a visa petition was filed in the name of St. Mark Catholic Church seeking to classify the respondent as a special immigrant religious worker, along with supporting documents claiming that he worked as a minister at the church.  Although the respondent was never employed by the church, he filed an application for adjustment of status on September 30, 1998, accompanied by a Form G-325A (Biographic Information) stating that he had worked at St. Mark as a minister for several years.  The respondent and his wife, who was a derivative beneficiary of his special immigrant visa petition, were granted adjustment of status on January 13, 2000, based on his status as a religious worker.

On April 25, 2011, the respondents arrived at the Miami airport and applied for admission as returning residents.  The respondent was referred to deferred inspection where he signed a sworn statement admitting that he never worked as a minister in the United States, yet he became a permanent resident as a religious worker.  The Department of Homeland Security ("DHS") initiated removal proceedings, alleging that the respondents had obtained permanent resident status by fraud or willful misrepresentation of a material fact.

In proceedings before the Immigration Judge, the respondent claimed that until he was in deferred inspection at the airport, he did not know his adjustment of status application falsely claimed that he worked as a minister.  He testified that he entered the United States as a nonimmigrant and was referred to a person who he understood could represent him in his effort to obtain permanent immigration status.  He further stated that the representative, who he believed was an attorney and pastor, told the respondent that for $15,000 he could help him become a permanent resident "through the church."

The respondent explained that his application for adjustment of status and the supporting documents were prepared by the representative and his staff. He conceded that he signed the adjustment application, but he claimed that he did not know its contents because he did not speak or read English.  His wife also admitted that she signed an adjustment application, which was dependent on the respondent's status as a religious worker, but said she did not know it contained false information.

---

[2]   Unless otherwise specified, we will refer to the husband, who is the lead respondent, as "the respondent."

The Immigration Judge concluded that the respondents were not credible and held that they procured adjustment of status by willful misrepresentation of a material fact. He therefore found them to be removable as aliens who are inadmissible under section 212(a)(6)(C)(i) of the Act.[3]

## II. ANALYSIS

According to section 212(a)(6)(C)(i) of the Act, "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act is inadmissible." Misrepresentations are willful if they are "deliberately made with knowledge of their falsity." *Matter of S- and B-C-*, 9 I&N Dec. 436, 445 (BIA 1960; A.G. 1961); *see also Suite v. INS*, 594 F.2d 972, 973 (3d Cir. 1979) (per curiam) (stating that "knowledge of the falsity of a representation is sufficient to satisfy the scienter element" of willfulness, which "entail[s] voluntary and deliberate activity"); *Matter of Kai Hing Hui*, 15 I&N Dec. 288, 289–90 (BIA 1975) (noting that, unlike fraud, a finding of willfulness does not require an "intent to deceive"). A misrepresentation is material when it has a "natural tendency to influence, or [be] capable of influencing, the decision of the decision-making body to which it was addressed." *United States v. Boffil-Rivera*, 607 F.3d 736, 741 (11th Cir. 2010) (alteration in original) (citation omitted).

To establish the respondents' removability, the DHS offered a number of documents into evidence, including the visa petition to classify the respondent as a special immigrant religious worker. Supporting documents filed with the visa petition purported to certify that the respondent was an ordained minister who was a salaried employee at St. Mark Catholic Church. The respondent's application for adjustment of status also stated that his occupation was a minister, and his biographic information form indicated that he worked at St. Mark from May 1995 to September 30, 1998, the date the documents were signed. The DHS also submitted a transcript of the respondent's 2011 airport interview, in which he admitted to immigration officials that he had signed papers to apply for immigration benefits as a religious worker and had been granted permanent resident status on that basis, but he had never worked at the church.

In holding that the respondents made willful misrepresentations, the Immigration Judge found that they knew of or authorized the false statements their representative made on their behalf in their applications

---

[3] The Immigration Judge also denied the respondents' request for a waiver of their removability under section 237(a)(1)(H) of the Act. However, they have not raised that issue on appeal, so it is deemed waived. *Matter of N-A-I-*, 27 I&N Dec. at 73 n.1.

for permanent resident status. The respondents claim that because the documents were in English, they could not read them and were unaware of their contents. Citing *Ortiz-Bouchet v. U.S. Attorney General*, 714 F.3d 1353 (11th Cir. 2013) (per curiam), the respondents argue that the Immigration Judge erred because the evidence in the record is not sufficient to support the conclusion that they made a willful misrepresentation. We disagree.

Courts have held "in various contexts, including immigration cases, [that] one's signature on a form or contract establishes a strong presumption" that the signer knows its contents and has assented to them, absent evidence of fraud or other wrongful acts by another person. *Thompson v. Lynch*, 788 F.3d 638, 647 (6th Cir. 2015); *see also, e.g.*, *United States v. Baptist*, 759 F.3d 690, 696 (7th Cir. 2014) (holding that an alien's failure to read a waiver form containing clear warnings of its consequences was insufficient to prove that the waiver was invalid, absent evidence that he was tricked or pressured into signing it); *cf. Bingham v. Holder*, 637 F.3d 1040, 1045 (9th Cir. 2011) (stating that in the absence of fraud or other wrongful act on the part of another, a person who signs a contract is presumed to know its contents and to assent to them).

The regulations also support this legal principle. For example, the asylum regulations provide that an "applicant's signature [on an asylum application] establishes a presumption that the applicant is aware of the contents of the application." 8 C.F.R. §§ 208.3(c)(2), 1208.3(c)(2) (2018); *see also Matter of Y-L-*, 24 I&N Dec. 151, 161 (BIA 2007) (rejecting the respondent's assertion that his attorney was to blame for including incorrect information in his asylum application). Thus, an alien's signature on an immigration application establishes a strong presumption that he or she knows the contents of the application and has assented to them. *See Hanna v. Gonzales*, 128 F. App'x 478, 480 (6th Cir. 2005) (stating that "the law . . . charges [an applicant] with knowledge of the application's contents").

When an alien challenges the accuracy of the contents of a signed application, the Immigration Judge must evaluate the alien's explanations and consider the facts of the particular case to determine whether he or she has rebutted the presumption of knowledge of the document's contents. *See Zhi Wei Pang v. BCIS*, 448 F.3d 102, 107–08 (2d Cir. 2006). However, an alien may not deliberately avoid reading the application or having it explained or translated in an attempt to circumvent the presumption. *See Bautista v. Star Cruises*, 396 F.3d 1289, 1301 (11th Cir. 2005) (noting "the general principle that '[o]ne who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation'" (citation omitted)); *cf. United States v. Puente*, 982 F.2d 156, 159 (5th Cir. 1993) (holding that "a defendant who

deliberately avoids reading the form he is signing cannot avoid criminal sanctions for any false statements contained therein").

It is undisputed that the respondents signed adjustment applications that were based on the assertion that the respondent was employed as a religious worker at St. Mark Catholic Church. A strong presumption that they knew the contents of their documents arose from the fact that they signed the documents. To rebut the presumption, they primarily argue that they were unaware of the false statements in their applications because they did not know English and the documents were never translated for them. Given the nature and significance of immigration documents, however, it is reasonable to expect that aliens will take steps to ascertain the accuracy of documents they sign and obtain a translation, if necessary.

In assessing whether the respondents knew of or authorized the false statements in their applications, the Immigration Judge found that they lacked credibility. He determined that their testimony was inconsistent in various significant respects and that their recitation of events was unpersuasive because it was vague and elusive. The Immigration Judge also found that, under the questionable circumstances of this case, it was implausible that the respondents were unaware of the inaccuracies in the documents they signed.

The respondent admitted he never worked at St. Mark. He gave conflicting testimony regarding his involvement with the church, including whether he ever even attended services there. Although he initially stated that he first became a member and helped with catechism classes there sometime between 1995 and 1997, he later testified that he never attended St. Mark but, instead, went to a different Catholic church from 1996 to 1999. Moreover, the respondent's testimony about the date he began going to St. Mark was not in agreement with that of his wife, who stated that her family only went to that church after 1998. In addition, after testifying that he told his representative he attended St. Mark, the respondent later retracted his statement and said that they never discussed whether he went to church.

The respondent also admitted in his airport interview that he obtained permanent resident status as a religious worker, even though he was not a minister and was never paid a salary by a religious organization. He testified that the $15,000 he paid the representative was a lot of money and acknowledged that the promise to obtain permanent residence for him "through the church" seemed "too good to be true." He never inquired how he could do this, despite the fact that he and his wife had several meetings with the representative and his staff.

After carefully considering their testimony and the documentary evidence of record, the Immigration Judge found that the respondents were not credible and that their claim that they did not know about the

misrepresentations in their applications was implausible. The Immigration Judge was entitled to make "reasonable inferences from direct and circumstantial evidence of the record as a whole" and was not required to interpret the evidence in the manner advocated by the respondents. *Matter of D-R-*, 25 I&N Dec. 445, 454–55 (BIA 2011), *remanded on other grounds*, *Radojkovic v. Holder*, 599 F. App'x 646, 648 (9th Cir. 2015). Consequently, there is no clear error in the Immigration Judge's adverse credibility finding or in his determination that the respondents were aware of or authorized the false statements the representative made on their behalf. *See* section 240(c)(4)(C) of the Act, 8 U.S.C. § 1229a(c)(4)(C) (2012); *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1332 (11th Cir. 2011) (per curiam).

Even if the respondents were credible, they signed documents that contained false statements without asking that they be translated or explained. The respondent's signature was directly below a statement certifying, under penalty of perjury, that his application and the evidence submitted with it were all true and correct. The respondent conceded that he knew that the adjustment application he signed was to obtain immigration status as a religious worker and that he had never been employed at St. Mark Catholic Church. The respondent's wife, his derivative beneficiary, admitted that the representative told her the adjustment application was for her to become a permanent resident before she signed the same statement attesting to the truth of her application and all the supporting documents. Significantly, neither of the respondents claimed to have been misled or deceived by the representative or his staff.

At a minimum, the facts and circumstances indicate that the respondents made a conscious choice to avoid knowing about the misrepresentations their applications contained. Such deliberate avoidance does not excuse their false statements. *See Hanna*, 128 F. App'x at 480 (rejecting an alien's claim that he did not willfully misrepresent facts in an adjustment application that he had declined to read and finding that his "failure to apprise himself of the contents of this important document constituted *deliberate avoidance*—an act the law generally does not recognize as a defense to misrepresentation" (emphasis added)); *see also Bautista*, 396 F.3d at 1301; *Puente*, 982 F.2d at 159. Under the circumstances, we conclude that the Immigration Judge properly applied the presumption of knowledge and determined that the respondents knew of or authorized the falsehoods in their documents. *See Thompson*, 788 F.3d at 647; *Diaz v. U.S. Att'y Gen.*, 730 F. App'x 890, 891–92 (11th Cir. 2018) (mem.) (per curiam). *See generally Matter of Gomez-Beltran*, 26 I&N Dec. 765, 768 (BIA 2016) ("Truthful testimony and disclosures are critical to the effective operation of the immigration court system.").

The respondents' reliance on *Ortiz-Bouchet* is misplaced. Unlike the respondents, the alien in that case claimed that he had never seen the documents and that his signature on them had been forged. In addition, the Immigration Judge in that case expressly determined that the alien "did not personally willfully misrepresent a material fact." *Ortiz-Bouchet*, 714 F.3d at 1356. The court therefore found no substantial evidence that the alien "made, knew of, or authorized" the representative's misrepresentation on his behalf. *Id*. at 1357.

Here, the respondents have admitted that they signed their adjustment applications. Their signatures established a strong presumption that they knew the contents and assented to them. *See Thompson*, 788 F.3d at 647; *Hanna*, 128 F. App'x at 480. After reviewing all the facts of the respondents' case, the Immigration Judge found that they were not credible because their testimony was inconsistent and evasive and their claim of ignorance about the contents of their applications was implausible. *See Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 546–47 (11th Cir. 2011) (per curiam). He concluded that the respondents did not rebut the presumption of knowledge, and he made a permissible inference that they knew of or authorized the false statements the representative made on their behalf. *See United States v. Gaines*, 690 F.2d 849, 853 (11th Cir. 1982) (A "permissible inference . . . is a common evidentiary tool that allows, without requiring, the trier of fact to infer the existence of an elemental fact upon proof of a basic evidentiary fact").

We conclude that there is no clear error in the Immigration Judge's adverse credibility finding or his determination that the respondents procured their adjustment of status by willful misrepresentation of a material fact. *See* section 240(c)(4)(C) of the Act; *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) (stating that a finding that is plausible in light of the record viewed in its entirety is not clearly erroneous). Consequently, the DHS met its burden of proof to establish that they are removable under section 237(a)(1)(A) of the Act, as aliens who were inadmissible at the time of adjustment of status under section 212(a)(6)(C)(i). *See* section 240(c)(3)(A) of the Act; *Matter of D-R-*, 27 I&N Dec. 105, 113 (BIA 2017); *Matter of Bosuego*, 17 I&N Dec. 125, 131 (BIA 1979, 1980); 8 C.F.R. § 1240.8(a) (2018). Accordingly, the respondents' appeal will be dismissed.

**ORDER:** The appeal is dismissed.