# Matter of W-E-R-B-, Respondent

*Decided March 6, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An Interpol Red Notice may constitute reliable evidence that indicates the serious nonpolitical crime bar for asylum and withholding of removal applies to an alien.

(2) The respondent's violation of article 345 of the Salvadoran Penal Code, which proscribes participation in an illicit organization whose purpose is the commission of crimes, was "serious" within the meaning of the serious nonpolitical crime bar.

FOR RESPONDENT:  Allison J. Heimes, Esquire, Omaha, NE

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Bobbie C. Masters, Assistant Chief Counsel

BEFORE:  Board Panel:  MALPHRUS, Acting Chairman; COUCH, Board Member; NOFERI, Temporary Board Member.

NOFERI, Temporary Board Member:

In a decision dated August 16, 2019, an Immigration Judge denied the respondent's applications for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), determining that there are serious reasons to believe that the respondent had committed a serious nonpolitical crime prior to arriving in the United States.  The respondent has appealed from this decision.[1]  The appeal will be dismissed.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of El Salvador who entered the United States in 2012.  The Department of Homeland Security ("DHS")

---

[1]  On appeal, the respondent does not challenge the Immigration Judge's denial of his application for deferral of removal under the Convention Against Torture, so that application is not before us.  *See Matter of Y-I-M-*, 27 I&N Dec. 724, 729 n.2 (BIA 2019).

placed him in removal proceedings, charging that he is removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2018), as an alien who is present in the United States without admission or parole. He conceded removability and applied for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A) (2018), and for protection under the Convention Against Torture.

The DHS submitted an Interpol Red Notice dated July 10, 2018, reflecting that a warrant had been issued on March 31, 2016, by the Magistrates Court of San Salvador, for the respondent's arrest regarding a violation of article 345 of the Salvadoran Penal Code, which proscribes participation in an "illicit organization." The Red Notice indicates that, according to an investigation conducted in 2010, the respondent is a "gatillero," or "hit man," with the MS-13 gang. The Immigration Judge found that there are serious reasons to believe the respondent had committed a serious nonpolitical crime prior to his entry into the United States. The Immigration Judge further found that the respondent had not met his burden to prove by a preponderance of evidence that the serious nonpolitical crime statutory bar does not apply to him. Accordingly, the Immigration Judge determined that the respondent was ineligible for the requested relief.

## II.  ANALYSIS

### A.  Legal Standard

An alien is barred from obtaining asylum and withholding of removal when "there are serious reasons for believing that the alien committed a serious nonpolitical crime" before arriving in the United States. Section 208(b)(2)(A)(iii) of the Act (asylum); *see also* section 241(b)(3)(B)(iii) of the Act (withholding of removal); 8 C.F.R. § 1208.16(d)(2) (2019) (withholding of removal under the Convention Against Torture). *See generally INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (deferring to the analytical framework we outlined for evaluating the applicability of the serious nonpolitical crimes bar in *Matter of McMullen*, 19 I&N Dec. 90 (BIA 1984), *aff'd*, *McMullen v. INS*, 788 F.2d 591 (9th Cir. 1986), *overruled on other grounds by Barapind v. Enomoto*, 400 F.3d 744, 751 n.7 (9th Cir. 2005) (per curiam)).

We most recently articulated the framework for evaluating whether this statutory bar applies in *Matter of E-A-*, 26 I&N Dec. 1 (BIA 2012). We interpreted the "'serious reasons for believing' [standard] to be equivalent to probable cause, as have the circuit courts that have considered this question."

*Id.* at 3 (citing *Go v. Holder*, 640 F.3d 1047, 1052 (9th Cir. 2011); *Khouzam v. Ashcroft*, 361 F.3d 161, 165–66 (2d Cir. 2004)). We also explained that

> "[i]n evaluating the political nature of a crime, we consider it important that the political aspect of the offense outweigh its common law character. This would not be the case if the crime is grossly out of proportion to the political objective or if it involves acts of an atrocious nature."
>     Thus, we first consider whether the criminal conduct is of "an atrocious nature." If not, we balance the seriousness of the criminal acts against the political aspect of the conduct to determine whether the criminal nature of the applicant's acts outweighs their political character.
>       . . . The evaluation of a serious nonpolitical crime is conducted on a case-by-case basis considering the facts and circumstances presented.

*Id.* (alteration in original) (quoting *Matter of McMullen*, 19 I&N Dec. at 97–98) (citing *INS v. Aguirre-Aguirre*, 526 U.S. at 429–31).

### B. Serious Reasons for Believing

We first conclude that there are "serious reasons for believing" that the respondent committed a serious nonpolitical crime. Since the respondent is seeking relief from removal, he has the burden to establish that he satisfies the applicable eligibility requirements for his applications. *See* section 240(c)(4)(A) of the Act, 8 U.S.C. § 1229a(c)(4)(A). Because the commission of a serious nonpolitical crime is a mandatory bar to asylum and withholding of removal, if the DHS establishes that the "evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. § 1240.8(d) (2019); *see also* 8 C.F.R. § 1208.16(d)(2) (applying same burden-shifting framework to applications for withholding of removal); *cf. Aguirre-Aguirre*, 526 U.S. at 432 (citing with approval a prior regulatory burden-shifting framework, which is substantively similar to the one outlined in 8 C.F.R. § 1240.8(d)). In *Matter of M-B-C-*, 27 I&N Dec. 31, 36–37 (BIA 2017), we made clear that the DHS need not meet an "onerous standard" to shift the burden of proof to the respondent under 8 C.F.R. § 1240.8(d) and may do so by presenting "some evidence from which a reasonable factfinder could conclude that one or more grounds for mandatory denial of the application may apply."

The DHS submitted an Interpol Red Notice showing that the respondent is wanted in El Salvador based on allegations that he violated article 345 of the Salvadoran Penal Code for participating in an "illicit organization" and is a "hit man" for a gang organization. The DHS also submitted background information regarding Interpol Red Notices. Based on the evidence in the

record, the Immigration Judge found that a Red Notice is a request to locate and provisionally arrest an individual pending extradition, which the General Secretariat of Interpol issues at the request of a member country or an international tribunal based on a valid national arrest warrant. [2] The Immigration Judge further noted that a Red Notice may be published only if it fulfills all conditions for processing information, which include the criteria that the offense concerned is a serious ordinary law crime and, if the person is sought, the conduct constituting an offense must be punishable by a maximum deprivation of liberty of at least 2 years. The Immigration Judge noted that several crimes, such as offenses relating to "family/private matters," cannot be the basis of a Red Notice.

The DHS additionally submitted a Record of Deportable/Inadmissible Alien (Form I-213) dated February 25, 2019. Based on the Form I-213, the Immigration Judge found that the DHS notified Interpol when processing the respondent, that Interpol confirmed to the DHS that a match exists between the Red Notice and the respondent, and that the Red Notice was active. The Immigration Judge further explained that the Form I-213 indicated that the biographical information in the Red Notice matched the respondent's full name, date of birth, and place of birth, and it contained a photograph of the respondent identical to one on his El Salvadoran identification card. The Immigration Judge also properly noted that a Form I-213 is presumptively trustworthy and may not be excluded unless there is a showing that it is unreliable or contains incorrect information. *See Matter of Gomez-Gomez*, 23 I&N Dec. 522, 524 (BIA 2002) (en banc).

The respondent argues that the Red Notice does not have any probative value because such a notice is insufficient to establish probable cause for an arrest in the United States under the Fourth Amendment, and thus it does not have any probative value. U.S. Dep't of Justice, *INTERPOL Washington FAQ*, https://www.justice.gov/interpol-washington/frequently-asked-questions (follow "Can a person be arrested based on an INTERPOL Red Notice?" hyperlink) (last visited Mar. 3, 2020).[3] We disagree.

---

[2] The respondent argues that the DHS did not submit evidence of a current arrest warrant for him in El Salvador. However, the Red Notice indicates that the General Secretariat of Interpol has a copy of the arrest warrant. *Cf. Tatintsyan v. Barr*, No. 18-71056, 2020 WL 709663, at *1 (9th Cir. Feb. 12, 2020) (concluding that a "red notice [that] indicated that there was no 'Copy of Arrest Warrant Available at the General Secretariat'" did not support a finding of "serious reasons to believe" for purposes of the serious nonpolitical crime bar).

[3] The respondent also argues that the Red Notice in his case does not establish that he was convicted of a crime, only that he has been accused of committing one. However, the serious nonpolitical crimes bar requires only commission of, not conviction for, a crime. *See McMullen*, 788 F.2d at 596 (affirming our conclusion that the serious nonpolitical crime bar applies to an "individual [who] has committed a criminal act").

As the Immigration Judge properly noted, a Red Notice is not a formal international arrest warrant. Interpol, *Red Notices*, https://www.interpol.int/ How-we-work/Notices/Red-Notices (last visited Mar. 3, 2020). However, guidance from the United States Department of Justice also provides that a Red Notice "is the closest instrument to an international arrest warrant in use today." U.S. Dep't of Justice, *Criminal Resource Manual § 611 Interpol Red Notices*, https://www.justice.gov/archives/jm/criminal-resource-manual-611 -interpol-red-notices (last visited Mar. 3, 2020); *see also Guan v. Barr*, 925 F.3d 1022, 1029 n.2 (9th Cir. 2019).

In sum, the Immigration Judge found the Red Notice to be reliable for what it purports to be—namely, a request by a member country (here, El Salvador) to provisionally arrest a specifically identified person (here, the respondent) pending extradition based on a valid national arrest warrant for a crime that is not political in nature. We affirm the Immigration Judge's determination that on this record, the DHS has met its burden to show that the serious nonpolitical crime bar may apply to the respondent pursuant to 8 C.F.R. §§ 1208.16(d)(2) and 1240.8(d). *Matter of M-B-C-*, 27 I&N Dec. at 36–37; *cf. Marroquin-Retana v. Att'y Gen. U.S.*, 675 F. App'x 216, 219 (3d Cir. 2017) (per curiam) (concluding that there were "serious reasons for believing" that that the alien had committed a serious nonpolitical crime based on an "Interpol Notice" and other evidence).

Thus, the burden shifted to the respondent to prove by a preponderance of the evidence that the serious nonpolitical crime bar does not apply—in other words, to show that there are not serious reasons for believing that he committed a serious nonpolitical crime. 8 C.F.R. §§ 1208.16(d)(2), 1240.8(d); *see also Matter of M-B-C-*, 27 I&N Dec. at 36–37. Considering the respondent's testimony credible, the Immigration Judge found that he was arrested in El Salvador following a melee in 2010 that resulted in injury to a police officer. The respondent was also shot and had a gun on his person.[4]

The respondent submitted a letter from an attorney in El Salvador, which indicated that the charges stemming from this incident were dismissed in October 2018. The Immigration Judge found that this letter, standing alone, was insufficient to show that the criminal charges against the respondent had

---

[4] The respondent argues that because the Immigration Judge found his testimony credible, he established by a preponderance of the evidence that the serious nonpolitical crime bar does not apply. We disagree. The findings regarding the respondent's testimony about his criminal conduct in 2010, in conjunction with the Immigration Judge's findings regarding the Red Notice and the Form I-213, are sufficient to determine that the respondent has not met his burden. For this reason, his attempt to distinguish his case from others where additional evidence accompanied a Red Notice is unavailing. *See Marroquin-Retana*, 675 F. App'x at 220.

been dismissed.[5]  The Immigration Judge noted that the respondent did not submit official court documents regarding these criminal charges.  *See Marroquin-Retana*, 675 F. App'x at 220 (noting that a letter from an alien's attorney stating that criminal proceedings against him were "suspicious" was "not compelling evidence" and was insufficient to establish that the alien had "been found not guilty").  As noted, moreover, the Immigration Judge found that the Red Notice is still active, and the information on the Form I-213 is presumptively trustworthy.  We discern no clear error in the Immigration Judge's factual findings.  *See Matter of A.J. Valdez and Z. Valdez*, 27 I&N Dec. 496, 501 (BIA 2018) (holding that an Immigration Judge is "entitled to make 'reasonable inferences from direct and circumstantial evidence of the record as a whole' and [is] not required to interpret the evidence in the manner advocated by the respondents" (citation omitted)).

We will therefore affirm the Immigration Judge's determination that the respondent has not met his burden to establish by a preponderance of the evidence that the serious nonpolitical crime bar does not apply.  *See* 8 C.F.R. §§ 1208.16(d)(2), 1240.8.

## C.  Serious Nonpolitical Crime

The respondent has conceded, below and on appeal, that his crime in El Salvador in violation of article 345 of the Salvadoran Penal Code was nonpolitical.  Accordingly, we need not analyze this crime's political nature. *See Matter of E-A-*, 26 I&N Dec. at 4 n.2 (determining whether a crime is nonpolitical "is a much easier task when there is no clear political motive to criminal conduct").  Thus, the only remaining issue is whether the respondent's crime was "serious" for purposes of sections 208(a)(2)(A)(iii) and 242(b)(3)(B)(iii) of the Act.

---

[5]  In a case unlike this, where an alien has put forth evidence of the political nature of his crime to meet his burden, an Immigration Judge should consider evidence in the record that the foreign country issuing the Red Notice abuses them for political reasons.  *See Tatintsyan*, 2020 WL 709663, at *1 (concluding that a Red Notice from Russia was insufficient to establish "serious reasons for believing" that the serious nonpolitical crime bar applied where an alien presented evidence that the Russian Government abuses Red Notices for political reasons and credible testimony that the Russian Government had persecuted that respondent); *see also United States v. Mohamud*, 843 F.3d 420, 424 n.5 (9th Cir. 2016) ("Although Interpol will not publish requested Red Notices that violate Interpol's Constitution, which prohibits the organization from undertaking any activities of a political, military, religious or racial character, Interpol does not independently vet the governmental request for a Red Notice for its factual and legal justification." (citation omitted)).

We conclude, as did the Immigration Judge, that the nature of the respondent's alleged criminal conduct is serious. In determining the seriousness of the respondent's crime, a relevant consideration is whether his conduct involved "a substantial risk of violence and harm to persons." *Id.* at 5 n.3. The Immigration Judge concluded that a violation of article 345 of the Salvadoran Penal Code involves a substantial risk of violence and harm to persons. [6] This conclusion is based on the finding that article 345 criminalizes participation in "a grouping, association or illicit organization" whose "purpose or one of them is the commission of crimes," and which uses "violent means."[7] The Immigration Judge's finding in this regard contradicts the respondent's argument that this crime is nothing more than "loitering." We discern no clear error in the Immigration Judge's factual finding regarding the content of article 345. Additionally, the record reflects that the maximum term of imprisonment for a violation of article 345 is 9 years, which is also indicative of the serious nature of this offense.

We will therefore affirm the Immigration Judge's conclusion that the respondent's crime is "serious" within the meaning of sections 208(b)(2)(A)(iii) and 241(b)(3)(B)(iii) of the Act. *See Zheng v. Holder*, 698 F.3d 710, 714 (8th Cir. 2012) (affirming that a nonpolitical crime was

---

[6]  To the extent the respondent argues his criminal conduct was not "atrocious," and therefore cannot be "serious," he misstates the law. As the Supreme Court has explained, although "atrocious acts provide a clear indication that an alien's offense is a serious nonpolitical crime," we "need not give express consideration to the atrociousness of the alien's acts in every case before determining that an alien has committed a serious nonpolitical crime." *Aguirre-Aguirre*, 526 U.S. at 430 ("The [Board's] approach . . . does not equate every serious nonpolitical crime with atrocious acts.").

[7]  Specifically, the Immigration Judge found that article 345 of the Salvadoran Penal Code provides:

> Anyone who takes part in a grouping, association or illicit organization, will be punished with imprisonment of three to five years. The organizers, leaders, directors, or ringleaders will be punished with imprisonment of six to nine years. The groupings, associations, or organizations, temporary or permanent, of two or more persons with some degree of organization, whose purpose or one of them is the commission of crimes, as well as those who carry out acts or use violent means for admission of its members, permanence, or departure from them, shall be considered illegal. If the author or participant is a public authority, agent of authority, official or public employee, the penalty shall be increased to one third of the maximum and absolute disqualification of the charge, for equal time.

The content of foreign law is a question of fact. *Matter of A-G-G-*, 25 I&N Dec. 486, 505 n.19 (BIA 2011).

"serious" on a record that included evidence of the alien's assault on a government official and the issuance of an "ambiguous" arrest warrant).[8]

Because the Immigration Judge properly determined that the respondent is subject to the serious nonpolitical crime bar, he is statutorily ineligible for asylum and withholding of removal under the Act and the Convention Against Torture. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[8] The respondent argued below and on appeal that he committed the offense under duress, citing only *Matter of Negusie*, 27 I&N Dec. 347 (BIA 2018), and arguing that it should apply to his case. The Board concluded there that "duress is relevant in determining whether an alien who assisted or otherwise participated in persecution is prevented by the . . . 'persecutor bar' from establishing eligibility for asylum and withholding of removal." *Id.* at 348. Subsequently, the Attorney General certified the case to himself for review, which automatically stayed our decision and rendered it without effect. *Matter of Negusie*, 27 I&N Dec. 481 (A.G. 2018); *see also Matter of E-L-H-*, 23 I&N Dec. 700, 702 (A.G. 2004) (stating that "if a Board decision has been certified to the Attorney General, it is neither final nor effective during the pendency of the Attorney General's review"). Given that our decision in *Negusie* regarding the persecutor bar is without effect, we decline to hold that it applies to the different statutory bar to asylum and withholding from removal for serious nonpolitical crimes. Because the respondent has not developed this argument further, we will not address it further. He has also not argued below or on appeal that he committed his crime in self-defense. *See Matter of E-A-*, 26 I&N Dec. at 7 n.6.