**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 30, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ASHA SALIM,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 23-9563
(Petition for Review)

_____

## ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.

_____

Asha Salim, appearing pro se, is a native and citizen of Somalia.[1]  She

petitions for review of the Board of Immigration Appeals' (BIA) dismissal of her

appeal from the immigration judge's (IJ) decision finding her removable under

8 U.S.C. § 1227(a)(1)(A) and permanently ineligible for immigration benefits under

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Ms. Salim appears pro se, we liberally construe her pleadings, but we will not act as her advocate.  *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

8 U.S.C. § 1158(d)(6).  Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petition for review.

In March 2005, Ms. Salim filed a sworn application for asylum.  She claimed she entered the United States through Mexico, on or about November 5, 2004, and that a smuggler brought her into the country with a green card.  In her asylum application, Ms. Salim also attested (1) she never used another name, including a maiden name or alias; (2) she lived in Kenya from September 1996 until October 2004; (3) she had not previously filed for refugee status, asylum, or withholding of removal in the United States; (4) she never personally applied for or received any lawful status in any other country; and (5) she was filing her application within one year of her arrival in the United States.  Ms. Salim was granted asylum in 2012.  Four years later, she was issued a notice to appear alleging that she procured that grant of asylum by fraud or willful misrepresentation.  8 U.S.C. § 1182(a)(6)(C)(i); 8 U.S.C. § 1227(a)(1)(A).

In 2019, the IJ found Ms. Salim procured asylum through willful misrepresentation.  *See Matter of Valdez*, 27 I. & N. Dec. 496, 498 (B.I.A. 2018).  Relying primarily on the Department of Homeland Security's (DHS) search of Ms. Salim's Fingerprint Identification Number (FIN) and a report from the United States Visitor and Immigrant Status Identification Number (US-VISIT), the IJ found "it dispositive that a search of [her] name and FIN within the US-VISIT report generated the entrance of two separate identities—" the first was Istarlin Munye Muhiyadin (Muhiyadin), who entered the United States in 2001 and applied for

asylum in 2002, and the second was Hawa Moalin Abdallhi Mohamed (Mohamed), "who[] has permanent residency in Denmark." R., vol. I at 59.[2]

The IJ determined the misrepresentations were material because "[i]f [Ms. Salim] notified the [immigration] [c]ourt [in 2012] that she had previously filed an asylum application under a different identity, or that she had permanent residence in a different country, it would have rendered her ineligible for asylum in the United States." *Id*. Alternatively, the IJ found that her "failure to be forthcoming with such information . . . shut off a line of questioning that would have changed the outcome of the earlier proceedings." *Id*. The misrepresentations were willful, the IJ reasoned, because Ms. Salim failed to rebut the presumption that she knew the 2002 asylum application was filed under a separate identity. The IJ emphasized Ms. Salim failed to explain why her fingerprints matched the fingerprints in Muhiyadin's asylum application. *See id*. at 60.

Next, the IJ found the necessary elements to conclude Ms. Salim's application was frivolous and therefore found her permanently ineligible to receive future immigration benefits. *See id*. at 62-63. An asylum application is frivolous if "[a]ny of the material elements in the . . . application is deliberately fabricated, and the [IJ] or the [BIA] is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of

---

[2] The IJ denied Muhiyadin's request for withholding of removal *in absentia* when she failed to appear for a hearing on the requested relief. *See* R., vol. I at 415.

the claim." 8 C.F.R. § 1208.20(a)(1). The IJ rescinded Ms. Salim's grant of asylum and ordered her removed to Somalia; however, he granted withholding of removal to Somalia and ordered removal to Denmark.

Ms. Salim's attorney filed a notice of appeal at the BIA; however, her attorney withdrew shortly thereafter, and she filed a *pro se* brief raising four issues.

*First*, she argued res judicata precluded the IJ from considering her identity in the 2019 proceedings because it was raised and decided in the 2012 proceedings. *See* R., vol. I at 17. The BIA disagreed, citing the IJ's 2018 order denying Ms. Salim's motion to dismiss on res judicata grounds. The issue in 2012 concerned whether she was the biological parent of two children included on an asylum application, and not as Ms. Salim claimed, whether she "failed to disclose another identity and actually entered the United States at a different time than she previously stated." *Id*. at 4.

*Second*, Ms. Salim maintained she was listed as a derivative beneficiary on her husband's asylum application in 2002, so she was ineligible for asylum in Denmark, and thus, the "alleged grant of asylum and resultant citizenship in Denmark, was illegal." *Id*. at 18. The BIA determined the issue was waived because she failed to raise the argument before the IJ.

*Third*, Ms. Salim argued that "[a]ny false name she may have given for the purpose of entering [the United States] . . . was not for the purpose of obtaining an immigration benefit to which she was not entitled, because . . . [w]hen she . . . filed individually [for asylum] in 2002, . . . she preserved her rights to asylum no matter

4

what name she used[.]" *Id*. at 19 (internal quotation marks omitted). The BIA found this argument was also waived because she did not raise it before the IJ.

*Fourth*, Ms. Salim argued the IJ erred in relying on fingerprint evidence to demonstrate she willfully misrepresented a material fact on her application because it was "not only virtually impossible, but absolutely physically impossible for her to have submitted herself to all the various fingerprint charts." *Id*. at 19. According to Ms. Salim, this would have required her "to have been in several locations at the same time, totally in contradiction to the objectively verifiable evidence on the record, as a whole and properly weighed." *Id*. at 17-18. She also argued that because the heights and weights of the three women who provided fingerprints are different, they cannot be the same person. *See id*. at 17. She suggested the IJ should have asked her to "renew her Denmark passport to prove her Danish citizenship." *Id*. at 16.

The BIA upheld the IJ's finding. Ms. Salim's argument, the BIA concluded, "does not constitute sufficient evidence to rebut the DHS'[s] evidence showing that [she] willfully misrepresented a material fact on her asylum application." *Id*. at 4 (internal quotation marks omitted). The BIA observed that she presented no "meaningful evidence to undermine DHS's evidence." *Id*. (brackets and internal quotation marks omitted). The BIA further noted that Ms. Salim "does not meaningfully challenge on appeal the [IJ's] finding that she filed a frivolous asylum application," and therefore did not address the issue. *Id*. at n.5.

I

We first discuss the applicable law and then turn to Ms. Salim's arguments for reversal.

A

"On appeal of a BIA order, the scope of our review is governed by the form of the BIA decision." *Htun v. Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016) (brackets and internal quotation marks omitted). When, as in this case, a single member of the BIA dismisses an appeal and issues a decision, "we review the order as the final agency determination and limit our review to the grounds relied upon by the BIA." *Id*. However, "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id*. (internal quotation marks omitted).

We review the BIA's legal conclusions de novo. *Igiebor v. Barr*, 981 F.3d 1123, 1131 (10th Cir. 2020). We review the BIA's factual findings for substantial evidence. *Id*. The Immigration and Nationality Act provides that a reviewing court must accept "administrative findings of fact" as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This is a "highly deferential" standard. *Nasrallah v. Barr*, 590 U.S. 573, 583 (2020). Further, "it is not our prerogative to reweigh the evidence, but only to decide if substantial evidence supports the IJ's decision." *Yuk v. Ashcroft*, 355 F.3d 1222, 1236 (10th Cir. 2004).

6

A federal circuit court may "review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1).  In other words, "an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court."  *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010), *abrogated on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023).  "[I]ssue exhaustion is a claim processing rule that is mandatory but subject to forfeiture and waiver," which "[w]e enforce by declining to consider the unexhausted issue."  *Miguel-Pena v. Garland*, 94 F.4th 1145, 1152 (10th Cir. 2024).

Relatedly, "[t]he BIA has held that matters not raised before an IJ are not preserved on appeal."  *Torres de la Cruz v. Maurer*, 483 F.3d 1013 1022 (10th Cir. 2007).  *See also In re J-Y-C-*, 24 I. & N. Dec. 260, 261 n.1 (B.I.A. 2007) (stating that matters not raised before the IJ are waived on appeal).  Therefore, "[o]n a petition for review to this court, we will not permit the petitioner to circumvent proper procedural requirements of the BIA by presenting contentions that were procedurally barred by the [BIA.]"  *Torres*, 483 F.3d at 1022 (internal quotation marks omitted).

B

A noncitizen who secures asylum benefits and adjustment of status by the willful misrepresentation of material facts is inadmissible and subject to removal.  *See* 8 U.S.C. § 1182(a)(6)(C)(i); 8 U.S.C. § 1227(a)(1)(A).  A misrepresentation is willful if it is "deliberately made with knowledge of [its] falsity."  *Matter of Valdez*, 27 I. & N. Dec. at 498 (internal quotation marks omitted).

A noncitizen who knowingly submits a frivolous asylum application "shall be permanently ineligible for any benefits under the [Immigration and Nationality Act], effective as of the date of a final determination on such application."  8 U.S.C. § 1158(d)(6).  An application is frivolous if "[a]ny of the material elements in the asylum application is deliberately fabricated, and the [IJ] or the [BIA] is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim."  8 C.F.R. § 1208.20(a)(1).  The regulation also provides that permanent ineligibility will apply only when the alien receives proper notice and "a final order by an [IJ] or the [BIA] specifically finds that the alien knowingly filed a frivolous asylum application."  *Id.*

## II

Ms. Salim urges reversal on several grounds.  *First*, she maintains the agency's determination that she procured asylum benefits and adjustment of status through willful misrepresentations is not supported by substantial evidence.  According to Ms. Salim, the fingerprint evidence was unreliable because (1) she was being treated for malaria in Kenya in October 2004, and could not have provided the Mohamed fingerprints; (2) the heights and weights of the three women who provided fingerprints are different; and (3) the DHS fabricated the fingerprint evidence.

As a preliminary matter, we will not consider Ms. Salim's argument that the DHS fabricated evidence because she failed to raise this argument at the BIA, and it is therefore unexhausted.  *See Miguel-Pena*, 94 F.4th at 1155.  And Ms. Salim's other arguments also fail.  Here, the IJ found that the fingerprint evidence was more

8

reliable than any discrepancies in weight and height. He also relied on evidence that undercut Ms. Salim's claim that she was in Kenya in October 2004. Bound by the applicable standards of review, we cannot reweigh the evidence. *See Yuk*, 355 F.3d at 1236.

*Second*, Ms. Salim maintains she was named as a derivative beneficiary on an asylum application her husband filed in 2002, so she was ineligible for asylum in Denmark. The BIA found this issue was procedurally barred because she did not raise it before the IJ. We agree, and therefore, we will not consider it in this court. *See Torres*, 483 F.3d at 1022.

*Third*, Ms. Salim argues she was entitled to asylum as Salim, Mohamed, *or* Muhiyadin, so any false names she allegedly used were not for the purpose of obtaining an immigration benefit to which she was not entitled. *See* Pet'r Opening Br. at 11. The BIA found this argument was procedurally barred. We agree Ms. Salim did not raise this claim before the IJ, so we will not consider it. *See Torres,* 483 F.3d at 1022-23.

In her reply brief, Ms. Salim argues that "[a] misrepresentation cannot be willful or deliberate if at the time of making it, the [applicant] does not know the statement disobeys the law or has a legal effect pursuant to the law." Pet'r Reply Br. at 18. She complains the DHS produced no evidence that she knew the law required her to apply for asylum within one-year of her arrival or knew that "she was not eligible for either asylum or withholding when she filed her application." *Id*. at 17. As a general rule, we ordinarily will not consider issues raised for the first time in a

9

reply brief. *See McKenzie v. U.S. Citizenship & Immigr. Servs.*, 761 F.3d 1149, 1154-55 (10th Cir. 2014). Even if it had been properly presented on appeal, the argument is unexhausted—and therefore not properly before this court—because Ms. Salim failed to raise it to the BIA. *See Miguel-Pena*, 94 F.4th at 1155.

*Fourth*, Ms. Salim claims reversal is required based a new theory of res judicata advanced for the first time in this court. Before the IJ and at the BIA, she argued that her identity was at issue in the 2012 asylum proceeding when the government discovered through genetic testing that some of her claimed children were not her biological children, and therefore any issues concerning her identity were res judicata. *See* R., vol. I at 17, vol. II at 588-89. However, in this court, she maintains that the issue of her identity was res judicata for a different reason— namely, because the agency had "full knowledge of the fingerprint evidence" in the earlier proceedings but decided not to raise the issue. Pet'r Opening Br. at 27. This is not only a new theory, but it is undermined by the record which shows that the government first received confirmation of the fingerprint matches in 2018—long after the earlier proceedings had ended. *See* R., vol. I at 452.

"The doctrine of res judicata, or claim preclusion, will prevent a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). "The principle underlying the rule . . . is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,

847 F.3d 1221, 1239 (10th Cir. 2017) (internal quotation marks omitted).  Here, she

argues that any issue of her identity was res judicata because the agency had "full

knowledge of the fingerprint evidence" during the 2012 proceeding and could have,

but failed to, address it.  Pet'r Opening Br. at 27.  We will not address this new

theory because it was not exhausted at the BIA.  *See Miguel-Pena*, 94 F.4th at 1155.

Finally, in her reply brief, Ms. Salim concedes she did not argue in the BIA

that her asylum application was not frivolous.  Still, she urges us to overlook the

omission because the issue was raised in an "ATTACHMENT to Notice of Appeal to

the Board."  Pet'r Reply Br. at 21.  To be sure, the attachment lists frivolousness as

an issue; however, Ms. Salim did not brief the issue, and the agency did not address

it.  This court has not yet resolved whether an argument raised in a notice of appeal

and not addressed in the appellate briefing before the BIA is waived.  *See Rangel-*

*Fuentes v. Garland*, 99 F.4th 1191, 1199 n.7 (10th Cir. 2024) (explaining the court

"need[ed] not decide whether an appellant who makes an argument in her notice of

appeal but fails to address it in her appellate brief has waived that argument entirely,"

because appellant there raised the argument in "both her notice of appeal and her

brief to the BIA").[3]

---

[3] The court in *Rangel-Fuentes* distinguished *Garcia-Carbajal v. Holder*, 625 F.3d 1233 (10th Cir. 2010), which said an argument is not properly exhausted when "the petitioner introduce[s] an entirely new legal theory on appeal that he had not previously presented to the BIA."  *Rangel-Fuentes*, 99 F.4th at 1199 n.7.  But we did not address in *Rangel-Fuentes* or *Garcia-Carbajal* whether an argument raised only in the notice of appeal is adequately "presented to the BIA."

Given the lack of binding authority from our circuit, we look to persuasive out-of-circuit authority to guide our decision here.  Under these circumstances, we conclude the issue is unexhausted.  *See, e.g.*, *Tepas v. Garland*, 73 F.4th 208, 214 (4th Cir. 2023) ("[W]hen a petitioner . . . file[s] a brief, the BIA is entitled to look to the brief for an explication of the issues that petitioner is presenting to have reviewed") (internal quotation marks omitted)); *Claudio v. Holder*, 601 F.3d 316, 319 (5th Cir. 2010) ("[O]nce a petitioner elects in his notice of appeal to file a brief, that brief becomes the operative document through which any issues that a petitioner wishes to have considered must be raised"); *Hassan v. Gonzales*, 403 F.3d 429, 433 n.5 (6th Cir. 2005) ("[W]here a brief is filed with the BIA, the arguments presented within it supersede the statement made in the preliminary notice of appeal. Therefore, the arguments presented in the notice of appeal and not adopted in the subsequently filed brief are waived, unless the BIA addresses them in its decision").

III

The petition for review is denied.

Entered for the Court

Veronica S. Rossman
Circuit Judge

12